## CLARK, Trustee, v. OKLAHOMA ELECTRIC CO.

No. 19190.   Opinion Filed April 15, 1930.

Rehearing Denied June 10, 1930.

Commissioners' Opinion, Divison No. 1.

R. W. Stoutz, for plaintiff in error.

West, Gibson, Sherman, Davidson & Hull, for defendant in error.

FOSTER, C.  This action was brought in the district court of Muskogee county by the Oklahoma Electric Company, as plaintiff, against the Eastern Oklahoma Publishing Company and others, as defendants, to foreclose a lien upon certain real estate and newspaper machinery and equipment located therein.  The defendant, Eastern Oklahoma Publishing Company, having gone into bankruptcy, W. H. Clark, as trustee, was substituted as party defendant.  The matter was submitted to the trial court, who found in favor of the plaintiff for the sum of $2,330, and an attorney's fee of $233, and decreed that the plaintiff have a lien upon certain funds held by the defendant, W. H. Clark, trustee; the property having been sold under an agreement that the fund was to be held subject to a final determination by the court as to whether or not a lien existed against the property.

From the judgment establishing the lien against the trust fund, the defendant prosecutes this appeal.  The parties will be referred to as they appeared in the trial court.

There are several assignments of error. The defendant contends, in substance, as follows:

(1)  That there are certain items of personal property contained in the statement of mechanic's lien which are shown to have been replacements, and no lien can exist thereon.

(2)  That the statement of mechanic's lien is fatally defective, in that it joins lienable and nonlienable items in the same statement.

(3)  That there is no showing that the material and labor furnished by the plaintiff were incorporated in the building.

(4)  That there was no contract shown between the owner and plaintiff.

(5)  That the lien statement was not filed within four months after the date of the last item under the contract.

(6)  That the material and labor shown by the lien statement were not under a single contract for the entire course of dealings, but were under separate and several contracts, all joined in the same statement.

(7)  That there was no lien upon the funds held in the hands of the trustee, because the evidence failed to prove that the funds were derived from property subject to the lien.

From a consideration of the entire case, we think the first question to be determined is whether or not the plaintiff, under the evidence, had a lien for the material furnished and labor done, as set out in the lien statement, between the 23rd of June, 1924, and the 14th of April, 1926.

The record in this case discloses that, on or about the 23rd day of June, 1924, one W. R. Sampson held title to a certain building located in the city of Muskogee, as trustee for the Knights of the Ku Klux Klan; that the defendant, Eastern Oklahoma Publishing Company, owned certain newspaper equipment and was either publishing or about to publish a newspaper in the city of Muskogee.  Apparently, by an agreement between the Klan and the newspaper company, that company was to obtain title to the building, but did not have the money at

that time to pay for it. At any rate, the equitable title to the building appears to have been in the newspaper company, sufficient at least to cause a lien to attach thereto. While the testimony is somewhat conflicting and indefinite, we believe there was sufficient evidence to uphold the finding of the trial court that the newspaper company had sufficient equitable title in the building to support a lien thereon for labor and material. The newspaper machinery and equipment were owned by the newspaper company.

W. R. Sampson was one of the directors of the newspaper company, and he, with the consent of the other directors, entered into an oral contract with the plaintiff for the furnishing of the electric machinery, supplies, and equipment that were necessary in the operation of the newspaper plant. This contract included installation of necessary electrical machinery, wires, and other equipment so that the plant could be operated, and to furnish all the supplies, equipment, labor, and other material necessary for the operation, as well as the installation, of the plant. This contract was ratified by the newspaper company.

The testimony is somewhat vague and uncertain as to the exact terms of the contract, but we think there is sufficient testimony in the record to support the proposition that a general contract was entered into, whereby the plaintiff was to furnish all of the electrical material, equipment, and supplies, and labor necessary for the installation of same in the newspaper plant so that it could be used in the operation thereof. That pursuant to this contract, the work and labor, and supplies and equipment necessary for the installation and operation, were furnished for a period of approximately 22 months. This equipment and material consisted chiefly of electrical wiring, pipes, motors, conduits, plugs, lamp cords, brushings, boxes, lamps, lamp fuses and fuse plugs, switches, electric heaters, electric fans, sockets, and the labor necessary for the installation of same, and apparently for the upkeep and replacements when some of the material was worn out or destroyed. Most of this material was furnished and labor performed during the first six months under the contract. During the year of 1925, the entire amount of labor performed and material furnished amounted only to about $29, and, from the testimony, a large part, if not all, of the material furnished was for replacements, or additional lamps and lights that were needed in the operation of the plant. The general contract included any-

thing that the newspaper plant might need during the term covered by the contract, which was about 22 months.

If we should assume that all the labor performed and material furnished were lienable items, we are presented with the question of whether or not this material and labor furnished under the general contract, as above indicated, were sufficient to extend the time for filing the lien so that the lien, which was in this case filed on the 5th day of May, 1926, within four months after the last item was furnished, would be sufficient to preserve the lien for all the material and labor furnished during the entire period.

It is well settled in this state that where material is furnished or labor performed for the same general purpose, as in the construction of a building or the drilling of an oil well or development of an oil and gas lease, although the material be ordered or labor performed at different times, yet, if the separate parts form an entire whole and are so connected as to show that the parties regarded the separate items furnished, at different times, as being part of the entire account, and not separate accounts, the furnishing of the material or the performance of labor in this manner will be considered as a single contract, and the filing of a lien within four months after the last item is furnished will be within time. Joplin Sash & Door Co. v. Oklahoma Presbyterian College, 36 Okla. 547, 128 Pac. 40; Sherbondy v. Tulsa Boiler & Mch. Co., 99 Okla. 214, 226 Pac. 564; Mid-Co Pipe & Supply Co. v. Central Torpedo Co., 127 Okla. 273, 260 Pac. 753; Fox Rig Co. v. Bell, 128 Okla. 300, 263 Pac. 119.

Nor is it necessary that the contract under which the material is furnished and the labor performed should be of such a nature that the parties could have it enforced by specific performance, or that either party would be required to answer in damages for the failure to comply with the contract. Where the parties have performed the contract, it becomes an executed contract, and not an executory one, and the lack of mutuality is removed. Mid-Co Supply Co. v. Central Torpedo Co., supra; Joplin Sash & Door Co. v. Oklahoma Presbyterian College, supra.

The case at bar presents a different situation than any of the cases relied upon. Here we have a contract construed in its most favorable light in favor of the plaintiff that provides for the furnishing of material and the performing of labor to a newspaper plant, both for the installation of the plant

and also all that is necessary to operate same. None of the cases referred to in the brief, nor have we been able to find any on independent investigation, go to the extent of holding that labor and material furnished in the operation of a business, plant, or factory, would be sufficient to extend the time of filing the lien, unless in the contemplation of the parties there was some period when the contract would come to an end.

In the case of Joplin Sash & Door Co. v. Oklahoma Presbyterian College, supra, the material furnished, while not specified in the original contract and not contemplated by the parties, was necessary for the construction and completion of a particular building which was in contemplation of the parties at the time. In the case of Sherbondy v. Tulsa Boiler & Mch. Co., supra, the same was true in the construction of a refinery. In the case of Mid-Co Pipe & Supply Co. v. Central Torpedo Co., supra, the contract was for the furnishing of the necessary material in the development of an oil and gas lease; and in the case of Fox Rig Co. v. Bell, supra, the contract was for the furnishing of material in the drilling of an oil well.

It will be seen in all of these cases that, while the contract was not specific as to the particular material to be furnished or the labor to be performed, there was in contemplation of the parties a particular undertaking that had for its purpose the accomplishment of a particular object, such as the construction of a building, or the drilling of a well, or development of a lease. Also, the section of the statute governing liens on oil and gas leases (section 7464, C. O. S. 1921) differs somewhat from the statute here involved (section 7461, as amended) in that section 7464, supra, provides a lien for "operation" of oil and gas leases. Here the contract is, at least in part, for the operation of a newspaper.

It could have been, and under the testimony perhaps was, the intention of the parties at the time the contract in the instant case was entered into, that it should extend over a period of many years, or perhaps as long as the newspaper was in operation. We cannot believe it was the intention of the Legislature, when it passed the lien statutes which govern this case (same being section 7461, as amended by 1923 Sess. Laws, c. 54, and section 7462, O. O. S. 1921), to cover a situation such as the one here presented, and allow a plaintiff under a contract, although it be binding between the parties, to furnish all the necessary material and labor in the operation of a newspaper business, and to furnish the same over a period of many years, and then at the end of the period file a lien within four months after the last item is furnished, and thereby preserve its lien as against creditors in good faith for all of the period covered by the contract. The period of time over which the material was furnished pursuant to the contract, is not controlling. If the material had been furnished and the labor performed in this case under a similar contract, which provided only for the construction of a building or the installation or setting up of a newspaper plant, or the development of an oil lease, or the drilling of an oil well, the same would have perhaps been sufficient to have maintained the lien, had the statement been filed within four months after the last item was furnished.

We are not unmindful of the law of this state that the provision of the lien law should be liberally construed in favor of the laborer and materialman so as to carry out the intent of the Legislature, which is security for the class of persons covered by its provisions. But it must also appear that the provisions have in good faith been substantially complied with. Taylor Bros. v. Gill, 126 Okla. 293, 259 Pac. 236.

There is, perhaps, a contention by the defendant that some of the articles furnished were inserted in the lien statement for the purpose of bringing the account down to a period within four months from the time the lien was filed. However, there is nothing in the record to support such contention. We think the material and labor were furnished in good faith on the date and days as shown by the record, and pursuant to the contract; but we cannot agree that, under the contract shown by this record, there was a substantial compliance with the provisions of the mechanic's lien law, as to items furnished four months prior to the filing of the lien.

The record shows that the material and labor were furnished whenever needed in the newspaper plant. The officers of the newspaper company sometimes came to the place of business of the plaintiff and purchased the material, and sometimes ordered it over the telephone, and at times there was a period for as long as three months when no material or labor of any kind was furnished or performed. This course of conduct extended during the greater part of the year 1925, and up to the 14th of April, 1926. It is clear to us that the material furnished and the labor performed during that period were only that which was necessary in the ordinary operation of the newspaper plant.

Although some of the material furnished was for new improvements in the plant, a large part of it was for replacements of material or equipment which had worn out or been destroyed. The lien was not filed until May 5, 1926. Under this record, it is our opinion that, as to all of the material furnished or labor performed more than four months prior to the filing of the lien statement, no lien was preserved; and although it be admitted that the same were lienable under our statute, the time for filing the lien had expired.

It therefore follows that all of the material furnished and labor performed prior to the 5th day of January, 1926, were furnished more than four months prior to the filing of the lien statement, and no lien was preserved as provided by section 7462, supra.

Under the record here presented, we think the labor performed and material furnished after the 5th day of January, 1926, were lienable, and that a lien therefor was properly preserved by the filing of the lien statement. Under the agreement, the trust fund held by the defendant was to take the place of "any lien against the property of the bankrupt." On this point there is some contention, but we think the agreement covers any lien against any property. However, the only items which would be included were those furnished on the following dates:

| | |
|---|---|
| Jan. 29, 1926, labor | $3.00 |
| Jan. 30, 1926, labor | 7.50 |
| Mch. 15, 1926, labor | 5.28 |
| Apr. 14, 1926, wire | .24 |
| Apr. 14, 1926, labor | 1.50 |
| Total | $17.52 |

It was agreed that the prevailing party should be entitled to 10 per cent. of the amount recovered as attorney's fees. No specific agreement was made as to what defendant should receive in case he prevailed.

The case is therefore reversed and remanded, with instructions to the trial court to allow a lien upon the trust fund held by W. H. Clark, as trustee, in favor of Oklahoma Electric Company in the sum of $17.52, and attorney's fees pursuant to the agreement.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.