See also, Bkrtcy., 69 B.R. 85.

In re N-REN CORPORATION, Debtor.

BANCAMERICA COMMERCIAL CORPORATION, the First National Bank of St. Paul, the Third National Bank In Nashville, and the Central Trust Company, N.A., Plaintiffs,

v.

OKLAHOMA NATURAL GAS COMPANY, Defendant.

Bankruptcy No. 1–86–00144.
Adv. No. 1–86–0145.

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 10, 1987.

Alan Gershenson, Philadelphia, Pa., James J. Cunningham, Cincinnati, Ohio, James L. Kincaid, Tulsa, Okl., Richard D. Holper, St. Paul, Minn., for plaintiffs.

Robert J. Sidman, Columbus, Ohio, for defendant.

DECISION ON MOTION FOR
SUMMARY JUDGMENT

BURTON PERLMAN, Bankruptcy Judge.

Plaintiffs filed this adversary proceeding to determine whether their lien rights in

inventory of the debtor have priority over the lien rights of the defendant. Plaintiffs have moved for summary judgment and defendant opposes the motion.

Plaintiffs claim a perfected security interest in inventory of the debtor at debtor's Pryor, Oklahoma facility, pursuant to duly filed Uniform Commercial Code financing statements dated April 21, 1976. Defendant sets forth no evidence to dispute that plaintiffs have a perfected security interest in the inventory dating from April 21, 1976. Defendant asserts, however, that it has a materialman's lien on the inventory which predates plaintiffs' lien.

Defendant's claimed lien arises in the following manner. Defendant and debtor, a manufacturer of fertilizer products, entered into a service agreement dated September 16, 1974, whereby defendant was to supply natural gas to debtor to be used in the production of inventory. Defendant provided natural gas service to the debtor pursuant to this agreement until January 7, 1986.

It is undisputed that on January 7, 1986, defendant filed a verified lien statement against the inventory pursuant to 42 Oklahoma Statute, § 97 and § 98, to secure payment in the amount of $596,766.44 for natural gas service from December 1, 1985 to December 24, 1985. On January 14, 1986, defendant filed another verified lien statement against the inventory to secure payment of $53,550.55 for gas supplied from December 25, 1985 to January 7, 1986. Plaintiffs do not dispute that the liens, as filed, are in compliance with the procedures set forth in the statute.

Only two factual disputes are presented. The first is whether or not the September 16, 1974 service agreement between defendant and debtor was ever terminated. Plaintiffs contend that the gas service agreement was terminated in 1984 and then extended by a second agreement, offering documentary evidence on this motion to support the contention. By an affidavit of its officer, defendant contends that the agreement was never terminated, but only extended or modified by a series of letters.

The second factual dispute surrounds the amount of natural gas used by debtor as heat for the facility as opposed to inventory production. Plaintiffs, through affidavit of debtor's general manager of the Cherokee Nitrogen Division, contends that 40% of the gas supplied by defendant was used by the debtor for heat. Defendant, by affidavit of its officer, states that 2% of the gas supplied was used for heat.

To prevail on its motion for summary judgment, plaintiffs must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in the bankruptcy court by Bankruptcy Rule 7056. Rule 56 reads, in part:

\* \* \* \* \* \*

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

\* \* \* \* \* \*

There are disputes of fact in the record before us as we have noted above. Factual disputes do not preclude summary judgment where the issues are not material to a decision. This we find to be the case here. We proceed, therefore, to apply the law to the undisputed facts which are presented.

In issue in this adversary proceeding is whether or not the defendant was an entity which could obtain a lien pursuant to 42 Oklahoma Statute, § 97, and, if so, when that lien was obtained. The statute reads:

§ 97. Lien for labor or materials for production, alteration or repair of personal property—Commencement of lien.

Any person, firm or corporation who furnishes labor, money, material or supplies for the production of, altering or repairs of any personal property at the request of the owner of said property, shall have a lien for the value of his money, labor, material or supplies upon said personal property as provided for in Section 2 of this act. Lien to date from

commencement of furnishing of labor, money, material or supplies.

§ 98. Filing of statements of lien with clerk—Innocent purchasers.

Any person entitled to a lien under this act shall within sixty (60) days after last furnishing of labor, money, material or supplies for the production of, altering or repairing of said personal property, file in the office of the county clerk of the county in which the property is situated a statement in writing verified by oath, showing the amount of labor, money, material or supplies furnished for the producing of, altering or repairing of said personal property, the name of the person for, and by whom labor, money, material or supplies, was furnished; unless the person entitled to such lien shall file such statement within the time aforesaid, he shall be deemed to have waived his rights thereto; Provided, that the lien provided for in this act shall not attach to any personal property after it has been purchased by an innocent purchaser for value, and has passed into his possession unless the lien shall have been filed with the county clerk of the county before the property was purchased by such purchaser, or he shall have received written notice, from the party entitled to the lien, of his intention to file the same.

█ Plaintiffs argue that defendant could not obtain a lien in debtor's inventory. Their thesis is that this statute does not contemplate that a supplier of natural gas which is transformed by a chemical process into fertilizer inventory can obtain a lien on that inventory. Plaintiffs have attached an affidavit by E.L. McCutchen, general manager of the Cherokee Nitrogen Division of the debtor. McCutchen states that generally it would be impossible to specifically attribute any particular portion of two of its products, UAN or ANG, on

hand when defendant's lien filing was made, to gas supplied by the defendant during any particular period of time.

Difficulty in accountability, however, cannot refute the clear wording of the statute which gives the right of a lien to "any person, firm or corporation who furnishes labor, money, material or supplies for the production of, altering or repairing of any personal property ..." We hold that defendant, a supplier of an essential component of debtor's inventory "furnishes ... supplies for the production of" that inventory and can acquire a lien in that inventory.

█ Having held that the defendant is an entity which can obtain a lien in debtor's inventory pursuant to 42 Oklahoma Statute § 97, we must next determine the point from which that lien dates, keeping in mind that a nonpossessory lien obtained prior in time is superior to one obtained later.

The last sentence of § 97 of the Oklahoma Statute states: "lien to date from commencement of furnishing of labor, money, material or supplies." Defendant asserts that the liens it obtained in January, 1986, should date from the original agreement of September 16, 1974, thereby predating plaintiffs' lien by about two years. Plaintiffs, to the contrary, argue that the date from which the lien was obtained should be either December 1, 1985, the date when the natural gas was supplied for use in the inventory liened, or from the commencement of the most recent contract in April, 1985, both dates being subsequent to the date of plaintiffs' U.C.C. filing.

We conclude that defendant's lien dates from the time that natural gas was furnished to produce the specific inventory upon which the lien is claimed. Here, that date is not earlier than December 1, 1985.[1]

---

**1.** It should be noted that the priority between the statutory lien claimed by defendant and the lien claimed by plaintiffs pursuant to the UCC, Article 9, is not resolved by resorting to the UCC, Article 9. Art. 9 states at § 9–104 (applicable in Oklahoma): "This Article does not apply ... (c) to a lien given by statute or other rule of law for services or materials except as provided in § 9–310 on priority of such liens ...". Sec-

tion 9–310 referred to in the above-quoted language deals only with possessory liens, and does not deal with the materials lien here in question. Also, the Oklahoma court in *Leger Mill Company, Inc. v. KleenLeen*, 563 P.2d 132 (Oklahoma 1977), held that the UCC is inapplicable to non-possessory liens and that the question of statutory liens in relation to secured interest

Our conclusion is buttressed by the stated purposes of mechanic's and artisan's liens. "The basis for a mechanic's lien ... lies in the principles of equity and dictates of natural justice. Such laws are based on the equity of paying for work done or materials delivered." 53 Am.Jur.2d, *Mechanic's Liens*, § 2. A statutory materialman's lien, a lien on personal property as opposed to real property, is derived from common law liens given to artisans and laborers, permitting them to retain possession of an item constructed or repaired until payment is received. 51 Am.Jur.2d, *Liens*, § 20. The rationale for such a lien for services or materials is that the claimant is entitled to be compensated for labor and materials which have enhanced the value of the property on which the lien is claimed. *Id.*, § 20.

A decision rendered by the Oklahoma Supreme Court supports our reading of the statute here in question.[2] In *Clark v. Oklahoma Electric Company,* 144 Oklahoma 21, 288 P. 935 (1930), the contract between a lien claimant and a debtor was in issue. The contract required that the plaintiff furnish all of the electrical material, equipment, and supplies and labor for the installation of a newspaper plant, and anything else that the newspaper plant might need during the term covered by the contract. The court drew a distinction between two kinds of contracts. The first is one for a particular purpose, such as construction of a building, or the drilling of a well, or the development of a lease. The second is one which continues indefinitely and goes to the ongoing operation of a business. The court stated:

> We cannot believe it was the intention of the Legislature, when it passed the lien statutes which govern this case [mechanic's liens statutes] to cover a situation such as the one here presented, and allow plaintiff under a contract, although it be binding between the parties, to furnish all the necessary material and labor

under the UCC must be determined by existing statutes and pre-Code case law.

**2.** The Oklahoma mechanic's lien statute found at 42 Oklahoma 192 states that a lien must be filed within four months after the last item was furnished. This differs from the materialmen's

in the operation of a newspaper business, and to furnish the same over a period of many years, and at the end of the period file a lien within four months after the last item is furnished, and thereby preserve its lien as against creditors in good faith for all the period covered by the contract.

The court held that a lien could not be acquired in a newspaper business to which material and labor had been supplied for a period of years merely by making the requisite filing within four months of supplying the last item.

 We conclude that the lien obtained by defendant dates from December 1, 1985 as to materials on hand on January 7, 1986, and as to the lien filed January 14, 1986, said lien dates from December 24, 1985. Since plaintiffs' liens predate those of defendant, the plaintiffs' liens take priority.

lien statute which indicates that a lien filed within 60 days dates from when the materials, supplies or labor commenced. However, as seen above, the purposes of both materialmen's liens and mechanic's liens, as far as their roots in common law, are similar.