**In re N–REN CORPORATION, Debtor,**

**BANK AMERICA COMMERCIAL; the First National Bank of St. Paul; the Third National Bank in Nashville; and the Central Trust Company, N.A., Plaintiffs–Appellees,**

**v.**

**OKLAHOMA NATURAL GAS COMPANY, Defendant–Appellant.**

No. 72332.

Supreme Court of Oklahoma.

May 23, 1989.

Alan C. Gershenson, Thomas E. Biron, Lawrence F. Flick, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., James J. Cunningham, Eric C. Okerson, Thomas L. Gabelman, Graydon, Head & Ritchey, Cincinnati, Ohio, for plaintiffs-appellees.

Robert J. Sidman, Robert S. Gebhard, Vorys, Sater, Seymour and Pease, Columbus, Ohio, for defendant-appellant.

HODGES, Justice.

The United States Court of Appeals for the Sixth Circuit certified the following question of law to this Court pursuant to the Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, §§ 1601–1612 (1981):

> Under 42 Okla. Stat. § 97, when a creditor, after supplying materials to a now-bankrupt debtor under a supply contract, acquires a materialmen's lien under 42 Okla. Stat. § 98 for materials sup-

plied under the contract, is the date of the materialmen's lien, for the purpose of establishing priorities between the materialmen's lien creditor and a creditor with a perfected security interest, (1) the date when the materialmen's lien creditor first supplied materials under the supply contract; (2) the actual supply date of the materials for which the materialmen's lien was obtained; or (3) some other date?

A review of the facts of this case and the applicable decisions of this Court leads us to conclude that the date of a materialmen's lien, for the purpose of establishing priorities between the materialmen's lien creditor and a creditor with a perfected security interest, is the actual supply date of the materials for which the materialmen's lien was obtained.

This action arose from the chapter 11 bankruptcy petition of N–REN Corporation (N–REN), a fertilizer producer in Pryor, Oklahoma. Defendant-appellant, Oklahoma Natural Gas Company (ONG), has appealed to the Sixth Circuit the summary judgment of the United States District Court for the Southern District of Ohio. That decision affirmed the holding of the United States Bankruptcy Court for the Southern District of Ohio that the April 21, 1976, perfected security interest of plaintiff-appellees (lenders) had priority over ONG's Oklahoma materialmen's liens dated January 7th and 14th, 1986.

On September 16, 1974, N–REN executed a natural gas service agreement with ONG, whereby N–REN agreed to purchase natural gas to be used to heat the N–REN plant, to supply energy for manufacturing processes, and as an ingredient in its fertilizer products. The original agreement was for a term of ten years. After being ex-

tended by letter agreement, the supply contract expired on March 31, 1985. Between April 1, 1985 and April 25, 1985, N–REN operated without any written agreement with ONG. Although the agreement was reinstituted and extended until March 31, 1987, ONG and N–REN entered into an agreement on December 24, 1985, providing for daily payments for continued gas service. On January 6, 1986, ONG terminated natural gas service for production at the N–REN plant.

ONG filed a lien statement against N–REN on January 7, 1986, claiming a $596,766.44 lien under the Oklahoma materialmen's lien statutes for natural gas supplied to N–REN between December 1, 1985 and December 24, 1985 and used as an element or ingredient in inventory produced during that period. On January 14, 1986, ONG filed another lien statement against N–REN's inventory to secure the payment of $43,550.55 for natural gas supplied between December 25, 1985 and January 7, 1986. ONG properly filed and perfected these liens against N–REN's inventory to secure the payment of over $600,000 representing past due amounts for natural gas supplied sixty days prior to their filings.[1]

Nearly ten years earlier, however, on April 21, 1976, lenders perfected a security interest in virtually all of N–REN's assets, including both the inventory located at N–REN's Pryor, Oklahoma facility and its after-acquired property. By January 15, 1986, N–REN owed lenders over $37.7 million.

On January 15, 1986, N–REN filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio. The bankruptcy court held that ONG's January 7th and 14th, 1986 lien filings established valid material-

---

1. ONG filed a statement of lien in compliance with the following statute:

Any person entitled to a [materialmen's lien] shall within sixty days after last furnishing of labor, money, material or supplies for the production of, altering or repairing of said personal property, file in the office of the County Clerk of the County in which the prop-

erty is situated a statement in writing verified by oath showing the amount of labor, money, material or supplies furnished for the producing of, altering or repairing of said personal property, the name of the person for, and by whom labor, money, material or supplies was furnished....

Okla.Stat. tit. 42, § 98 (1981).

men's liens which, for priority determinations, dated from December 1, 1985 and December 24, 1985, the earliest supply dates of the natural gas for which the liens were obtained. ONG's liens were thus held to be junior to lender's perfected security interest. *In re N–REN Corp.*, 71 B.R. 481 (Bankr.S.D.Ohio 1987). On appeal, the United States District Court affirmed the bankruptcy court's conclusions and granted lender's motion for summary judgment.

ONG now seeks reversal by the Sixth Circuit claiming that its liens are prior to lender's perfected security interest. This claim is based on an Oklahoma materialmen's lien statute which provides:

> Any person, firm or corporation who furnishes labor, money, material or supplies for the production of, altering or repairs of any personal property at the request of the owner of said property, shall have a lien for the value of his money, labor, material or supplies on said personal property as provided for in [Okla.Stat. tit. 42, § 98]. Lien to date from the commencement of furnishing of labor, money, material or supplies.

Okla.Stat. tit. 42, § 97 (1981). ONG contends that the language "lien to date from the commencement of furnishing of labor, money, material or supplies" requires its liens to date from September 16, 1974, when ONG began supplying natural gas under the service agreement. Lenders argue that their perfected security interest has priority because the proper materialmen's lien date for priority determinations is the actual supply date of the materials for which the lien was obtained.

The materialmen's lien provided by section 97 is a nonpossessory statutory lien. The Uniform Commercial Code (UCC) excludes from article 9 coverage priority disputes between perfected security interest holders and holders of nonpossessory statutory liens.[2] The maxim "first in time, first in right" governs priority between competing security interests and statutory liens. *United Tire & Investment Co. v. Maxwell*, 202 Okla. 476, 478, 215 P.2d 541, 543 (1950). Although UCC provisions do not apply to this situation, the underlying policies of the UCC and principles of commercial law are instructive.[3]

As early as 1601, the common law expressed its distrust of "secret liens," the transfer of an interest in personal property without delivery of possession.[4] The re-

---

**2.** Article 9 does not apply "to a lien given by statute or other rule of law for services or materials except as provided in Section 9–310 on priority of such liens." Okla.Stat. tit. 12A, § 9–104(c) (1981) (UCC references are to Oklahoma provisions found in title 12A). Section 9–310 applies only when services or materials are provided to "goods in the possession" of the supplier. Thus, priority disputes involving nonpossessory liens, such as the materialmen's lien, are not subject to article 9 provisions. *Leger Mill Co., Inc. v. Kleen–Leen, Inc.*, 563 P.2d 132 (1977) (UCC inapplicable to nonpossessory feedman's lien).

**3.** ONG asserts that because UCC provisions are inapplicable its policies should not be considered in resolving this priority dispute. However, comment 1 to section 1–102 explains:

> [Courts] have recognized the policies embodied in an act as applicable in reason to subject-matter which was not expressly included in the language of the act. They have done the same where reason and policy so required, even where the subject-matter had been intentionally excluded from the act in general.... Nothing in this Act stands in the

way of the continuance of such action by the courts (citations omitted).

The text of section 1–102(2) states:

> Underlying purposes and policies of this Act are
> (a) to simplify, clarify and modernize the law governing commercial transactions;
> (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
> (c) to make uniform the law among the various jurisdictions.

The current dispute will be resolved in accordance with these policies.

**4.** *See* Twyne's Case, 76 Eng.Rep. 809 (K.B.1601). *Twyne* involved one Pierce who was in debt to Twyne and to another creditor who had instituted suit against Pierce. Pierce secretly transferred ownership of his sheep to Twyne to satisfy the debt but retained possession and acted as if the sheep were still his own. Some of the sheep were sold to the other creditor who took them with no notice of the secret transfer to Twyne. The *Twyne* opinion warned:

> therefore, reader, when any gift shall be to you in satisfaction of a debt, by one who is

cent history of commercial law reflects the policy against the secret lien through the development of a succession of security devices and notice procedures culminating in the almost universal adoption of the UCC. All devices and procedures for consensual liens on personal property have now been consolidated into a single device, the "security interest," utilizing a simplified and workable system of "notice filing."[5] This unitary approach has infused uniformity, a degree of certainty, and relative simplicity into commercial law. G. Gilmore, *Security Interests in Personal Property* §§ 9.1, 10.1 (1965).

ONG's proposed construction of the materialmen's statute would favor the secret lien which the law has long distrusted and introduce uncertainty into inventory financing. No lender could feel secure lending money against inventory collateral for fear an inchoate, unfiled, nonpossessory, secret lien could in the future have priority over its perfected security interest. Such a rule would impede inventory financing and thus hamper commercial flow. It would generate confusion and uncertainty by in effect making the materialmen's lien an alternate method of inventory financing.

Long before the adoption of article 9's system of inventory financing, this Court rejected an argument very similar to ONG's in *Clark v. Oklahoma Electric Company*, 144 Okla. 21, 288 P. 935 (1930). The dispute in *Clark* involved a newspaper plant that contracted with an electric company for the labor, electrical supplies, ma-

terial and equipment necessary to produce a newspaper. The contractor supplied labor and materials to the newspaper plant for twenty-two months. During the last year of this time, the contractor supplied only what was necessary for the operation of the plant.

A mechanic's lien was filed within four months after the last item was furnished as required by the applicable statute. The contractor claimed its lien dated back to when material and labor was first supplied to the newspaper plant. Rejecting this claim, the *Clark* court drew a distinction between contracts to improve a specific item of property and those to supply an ongoing business, noting:

> We cannot believe it was the intention of the Legislature, when it passed the lien statutes which govern this case to cover a situation such as the one here presented, and allow a plaintiff under a contract, although it be binding between the parties, to furnish the same over a period of many years, and then at the end of the period file a lien within four months after the last item is furnished, and thereby preserve its lien as against creditors in good faith for all of the period covered by the contract.

*Id.* at 23, 288 P. at 937. Thus, *Clark* held that the validity of a mechanic's lien could reach back only to the date the last item was furnished.

Although the present dispute involves dating materialmen's liens for priority rather than validity purposes,[6] the *Clark* ratio-

indebted to others also; 1st, let it be made in a public manner, and before the neighbors, and not in private, for secrecy is a mark of fraud.

*Id.* at 814. The secret transfer to Twyne was viewed as fraudulent and invalid against creditors and purchasers. A lender's possession of collateral was viewed, at this point in the development of commercial law, as the only method of providing notice to third party creditors.

5. The comments to section 9–102 explain that article 9 covers, with certain exceptions, all consensual transactions in personal property intended to create a security. The comments to section 9–402 describe article 9's system of notice filing. Comment 2 notes that "[n]otice fil-

ing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day."

6. ONG claims this difference requires a rejection of *Clark* because it is not attempting to recover the over $4 million owed for natural gas service prior to December 1, 1985. Rather, ONG argues the *priority* of its valid lien should be measured from 1974, when gas was first supplied pursuant to its contract with N–REN. The bankruptcy court, however, correctly concluded that such a reaching back is also not allowed in priority determinations.

nale supports today's holding that the materialmen's liens do not relate back to the earliest supplying of materials under a contract. The date of a materialmen's lien for priority purposes is the actual supply date of the materials for which the lien was obtained.

QUESTION ANSWERED.

HARGRAVE, C.J., and DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, V.C.J., and LAVENDER and SIMMS, JJ., concur in result.

KAUGER, J., dissents.