883 F.2d 38
 In re N-REN CORPORATION, Debtor.
BANK AMERICA COMMERCIAL; the First National Bank of St.
Paul; the Third National Bank in Nashville; and
the Central Trust Company, N.A.,
Plaintiffs-Appellees,
v.
OKLAHOMA NATURAL GAS COMPANY, Defendant-Appellant.
 No. 87-4123.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 9, 1988.
Decided Aug. 21, 1989.
 
 Robert S. Gebhard, Vorys, Sater, Seymour & Pease, Robert J. Sidman (argued), Columbus, Ohio, Michael V. Snyder, Huffman, Arrington, Kihle, Gaberino & Dunn, Tulsa, Okl., for defendant-appellant.
 James C. Cunningham, Graydon, Head & Ritchey, Thomas L. Gabelman, Cincinnati, Ohio, for Bank America Commercial and Third Nat. Bank in Nashville.
 James L. Kincaid, Conner & Winters, Tulsa, Okl., Alan C. Gershenson (argued), Bland, Rome, Comisky & McCauley, Thomas E. Biron, Philadelphia, Pa., for Central Trust Co.
 Richard D. Holpe, Fabyanske, Svoboda & Westra, St. Paul, Minn., for First Nat. Bank of St. Paul.
 Jeffrey Marks, Taft, Stettinius & Hollister, Cincinnati, Ohio, for N-REN Corp.
 Before ENGEL, Chief Judge; and WELLFORD and BOGGS, Circuit Judges.
 ENGEL, Chief Judge.
 
 
 1
 This action arises from the January 25, 1986 Chapter 11 bankruptcy petition of N-REN Corporation, a Pryor, Oklahoma fertilizer producer. In determining creditor priorities, the United States Bankruptcy Court for the Southern District of Ohio granted summary judgment in favor of plaintiff-appellee Bank America Commercial Corporation (Bank America), holding that Bank America's April 21, 1976 perfected security interest in N-REN assets has priority over defendant-appellant Oklahoma Natural Gas Company's (ONG) Oklahoma materialmen's liens dated January 7 & 14, 1986. The United States District Court for the Southern District of Ohio upheld the summary judgment, and ONG appeals.
 
 
 2
 On September 16, 1974, N-REN executed a natural gas service agreement with ONG, whereby N-REN agreed to purchase natural gas to be used to heat the N-REN plant, to supply energy for manufacturing processes, and as an ingredient in its fertilizer products. The original agreement was for a term of ten years beginning December 1, 1974, with either party being able to terminate the agreement thereafter by giving 360 days notice. After the contract expired on March 31, 1985, ONG and N-REN operated without any written agreement between April 1, 1985 and April 25, 1985; on April 25, 1985, however, the service agreement was reinstituted and extended until March 31, 1987. On December 24, 1985, ONG and N-REN entered into an agreement providing for continuation of gas service with payments to be made daily. On January 6, 1986, ONG terminated natural gas service for production at the N-REN plant.
 
 
 3
 On January 7, 1986, ONG filed a verified lien statement against N-REN in county court in Oklahoma, claiming a $596,766.44 lien under 42 Okla.Stat. Secs. 97 and 98 for natural gas supplied to N-REN between December 1, 1985 and December 24, 1985 and used as an element or ingredient in inventory produced during that period. On January 14, 1986, ONG filed another lien statement against N-REN's inventory to secure payment of $43,550.55 for natural gas supplied between December 25, 1985 and January 7, 1986.
 
 
 4
 Nearly ten years earlier, however, on April 21, 1976, Bank America had perfected a security interest in virtually all of N-REN's assets, including both the inventory located at N-REN's Pryor, Oklahoma facility and after-acquired property, as collateral for future loans made to N-REN. By January 15, 1986, N-REN owed Bank America over $37.7 million.
 
 
 5
 On January 15, 1986, N-REN filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio. The bankruptcy court held that ONG's January 7 & 14, 1986 lien filings established valid materialmen's liens which had priorities dating December 1, 1985 and December 24, 1985, the earliest supply dates of the natural gas for which the liens were obtained. The bankruptcy court thus held ONG's liens to be junior to Bank America's security interest. On appeal, the United States District Court affirmed the bankruptcy judge's conclusions and granted Bank America's motion for summary judgment.
 
 
 6
 ONG now seeks reversal based upon the Oklahoma Materialmen's Lien Statute which provides:
 
 
 7
 Any person, firm or corporation who furnishes labor, money, material or supplies for the production of, altering or repairs of any personal property at the request of the owner of said property, shall have a lien for the value of his money, labor, material or supplies on said personal property as provided for in [42 Okla.Stat. Sec. 98]. Lien to date from the commencement of furnishing of labor, money, material or supplies.
 
 
 8
 42 Okla.Stat.Ann. Sec. 97 (emphasis supplied). ONG contends that the language "[l]ien to date from the commencement of furnishing of labor, money, material or supplies" requires the liens to date from September 16, 1974, when the natural gas service agreement began, i.e., when ONG commenced furnishing natural gas to N-REN, instead of December 1 & 24, 1985.
 
 
 9
 After oral argument, in order to clarify the scope of the Oklahoma Materialmen's Lien Statute, we certified the following question to the Oklahoma Supreme Court:
 
 
 10
 Under 42 Okla.Stat. Sec. 97, when a creditor, after supplying materials to a now-bankrupt debtor under a supply contract, acquires a materialmen's lien under 42 Okla.Stat. Sec. 98 for materials supplied under the contract, is the date of the materialmen's lien, for the purpose of establishing priorities between the materialmen's lien creditor and a creditor with a perfected security interest, (1) the date when the materialmen's lien creditor first supplied materials under the supply contract; (2) the actual supply date of the materials for which the materialmen's lien was obtained; or (3) some other date?
 
 
 11
 By opinion dated May 23, 1989, the Oklahoma Supreme Court answered our certified question, holding that the priority date of an Oklahoma materialmen's lien is the actual supply date of the materials for which the lien is obtained. N-REN Corporation v. Oklahoma Natural Gas Company, 773 P.2d 1269 (Okla.1989). According to the Oklahoma Supreme Court, "[a] review of the facts of this case and the applicable decisions of this Court leads us to conclude that the date of a materialmen's lien, for the purpose of establishing priorities between the materialmen's lien creditor and a creditor with a perfected security interest, is the actual supply date of the materials for which the materialmen's lien was obtained." Id. at 1270.
 
 
 12
 Thus, the United States Bankruptcy Court for the Southern District of Ohio correctly held that ONG's materialmen's liens had priority dates of December 1, 1985 and December 24, 1985: the earliest supply dates of the natural gas for which the liens were obtained. Therefore, the Bankruptcy Court was also correct in finding that Bank America's April 21, 1976 perfected security interest predates ONG's materialmen's liens, thereby having priority over the liens.
 
 
 13
 Accordingly, we AFFIRM the district court's order upholding the Bankruptcy Court's summary judgment for plaintiffs-appellees Bank America Commercial Corporation, the First National Bank of St. Paul, the Third National Bank in Nashville, and The Central Trust Company.