The **FOURTH NATIONAL BANK OF TULSA, Plaintiff–Appellant and Counter–Appellee,**

v.

Joann **APPLEBY, Special Administrator of the estate of Melvin P. Appleby, Jr., Deceased, et al., Defendants,**

and

**ANR Production Company, a corporation, Defendant–Appellee and Counter–Appellant.**

No. 74350.

Supreme Court of Oklahoma.

Nov. 23, 1993.

Thomas E. English, Carol Wood, English & Wood, Tulsa, for plaintiff-appellant and counter-appellee.

Richard K. Books, Sharon Taylor Thomas, Watson & McKenzie, Oklahoma City, for defendant-appellee and counter-appellant.

WATT, Justice.

Which takes precedence between ANR's mechanics' and materialmen's liens and Bank's mortgages is the central issue in this appeal. The resolution of this central issue requires that we address several matters of first impression.

Dates are critical to our decision. Consequently, we will set out a chronology of significant events. Unless otherwise indicated, the parties stipulated to the dates set out and to all other facts.

### CHRONOLOGY

| Event | Date(s) |
| --- | --- |
| OCC entered four orders force pooling Appleby's mineral interests. ANR was named operator: | 6/25/80 |
| Appleby elected to participate in ANR's wells under the terms of the OCC's forced pooling orders. Appleby paid his share of the ANR's drilling, completion and joint interest charges on the four wells until October 1981, following which time he paid no more of ANR's charges: | 1980–81 |
| Inclusive dates of ANR's unpaid joint interest charges billed to the Appleby interests: | 10/15/81–05/1/88 |
| Bank filed its mortgages between: | 04/4/83–02/6/84 |
| Bank filed its foreclosure action: | 10/17/86 |
| ANR filed a counterclaim against Bank asserting mechanics' and materialmen's liens and their priority over Bank's mortgages: | 04/30/87 |
| ANR filed lien claims (covering the same claims as those asserted in its counterclaim) in the Washita and Caddo County Clerk's offices under §§ 141, et seq.: | 07/14/89 |

### FACTS AND PROCEDURAL HISTORY

In 1980, ANR filed forced pooling applications in the Oklahoma Corporation Commission. ANR obtained Commission orders force pooling the mineral interests underlying four tracts located in Washita and Caddo Counties in which Appleby owned unleased minerals. The Commission's forced pooling orders gave unleased mineral owners the option to take a lease bonus and a percentage royalty, or to participate in the well. Participants would receive the full percentage of their ownership of the pooled area by agreeing to pay their pro-rata share of the costs of drilling, completion, and operation of the wells. Appleby elected to participate, but did not sign an operating agreement with ANR. Nevertheless, Appleby paid his share of ANR's well costs throughout 1980 until sometime shortly before October 15, 1981. Beginning with ANR's October 15, 1981 bill, Appleby paid no more of ANR's joint interest billings. These unpaid charges amount to $53,415.92. Appleby, however, never attempted to have ANR replaced as operator of the four wells.

Bank sued in October 1986 to foreclose its mortgages.[1] Bank alleged that its mortgage liens were superior to any claim ANR had to the property. In April 1987, ANR filed a counterclaim against Bank alleging that ANR had liens for its joint interest billings under the "specific terms of the force pooling orders and 52 O.S. § 87.1." On July 14 1989, shortly before trial, ANR filed formal lien statements in the Washita and Caddo County Clerks' offices, as provided for in 42 O.S.1981 §§ 141 et seq, for the unpaid $53,415.92.

The trial court held that ANR had liens under 52 O.S. § 87.1, but that because ANR did not file its liens in the land records under 16 O.S.1981 §§ .15 and 16 the liens did not bind third parties.[2] The trial court held that ANR also had liens under 42 O.S. § 144. Further, the trial court ruled that ANR's filings in the County Clerks' offices under §§ 141, et seq. perfected the liens and that the priority of those liens dated from October 15, 1981, the date of ANR's first unpaid joint interest billing to Appleby. In addition the trial court granted ANR an attorney's fee. Bank moved for new trial. The trial court denied Bank's motion and Bank appealed. ANR counter-appealed on the ground that the trial court erred in failing to hold that ANR's liens were perfected automatically when the Commission's forced pooling orders were filed.

The Court of Appeals held that ANR had no lien under § 144 because § 144 liens must be based on "contract, express or implied," and ANR's liens arose under the Commission's forced pooling orders, not under contract, either express or implied. Nevertheless, the Court of Appeals held

that ANR's liens took priority over Bank's mortgages under § 87.1. We infer from the Court of Appeals opinion that it ruled ANR's liens under § 87.1 were perfected when the forced pooling orders were issued by the Commission, and Bank had constructive notice of them when it took its mortgages from Appleby. The Court of Appeals held that the amount covered by ANR's liens was limited to those charges accruing within five years before ANR filed its lien statements with the County Clerks on July 14, 1989. The court based its ruling on 12 O.S.1981 § 95, Sixth.[3]

## ISSUES

Ultimately, there is but one issue here: Whose liens take priority, Bank's mortgages or ANR's mechanics' and materialmen's liens? In reaching our ultimate conclusion, however, we must consider several individual issues:

I. How are liens created under 52 O.S. 1981 § 87.1(e) perfected?

II. If ANR properly perfected its liens, what was "the date of the furnishing of the first [labor or material]" for establishing the priority of its liens under 42 O.S.1981 §§ 141, 142, and what effect does 42 O.S.1981 § 23 have on this calculation?

III. What are the rights and obligations of the parties with respect to attorney's fees?

## DISCUSSION

### Historical Background and Analysis of Oklahoma's Mechanics' and Materialmen's Lien Statutes

In this country, mechanics' and materialmen's liens were not recognized by either

---

1. Bank's suit had more parties and involved more issues than are dealt with in this opinion. For the purposes of clearly dealing with the issues in this appeal we will ignore the other parties and issues in the case.

2. 16 O.S.1981 § 15 provides in material part:

   ... No deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided.

16 O.S.1981 § 16 provides:

Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors.

3. 12 O.S.1981 § 95, Sixth provides:

Sixth. An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued.

the common law or equity. Consequently, in the United States, a right to such a lien exists, if at all, by statute. It has been observed that mechanics' and materialmen's liens are "quite certainly the most complicated of the liens created by statute." 53 Am Jur 2d *Mechanics' Liens* §§ 2 and 3. Oklahoma's mechanics' and materialmen's statutes prove the point.

Mechanics' and materialmen's liens give laborers and materialmen a level of protection enjoyed by no other lien holder because such liens have priority *from the date the first labor or materials are furnished*, although the lien may not be perfected by filing until much later. In general, mechanics' and materialmen's liens are governed by 42 O.S.1981 §§ 141–54. Section 141 provides a lien on land and improvements upon which one who, under an "oral or written contract," furnishes labor or materials to a property owner,

> ... for the erection, alteration or repair of any [improvements to real property].... Compliance with the provisions of this act shall constitute constructive notice of the claimant's lien to all purchasers and encumbrancers ... subsequent to the date of the furnishing of the first [labor or material].

This language creates a classic mechanics' and materialmen's lien, which protects laborers and materialmen whose labor or goods contribute to the *construction or repair* of an improvement to real property.

There is an important difference between § 141, on one hand, and 52 O.S. § 87.1(e), on the other. Section § 87.1(e) gives coverage not found in § 141 or any other traditional mechanics' and materialmen's lien statutes. Beyond providing a lien to those furnishing labor and materials used in drilling and repairing oil and gas wells, § 87.-1(e) provides a lien to anyone *operating* an oil or gas well. Unlike the laborers and materialmen's statutes, 42 O.S.1991 §§ 141,

et seq., § 87.1(e) is silent as to how a lien created under its terms is to be perfected.

That § 87.1(e) gives coverage for charges made for *operating* a well under a pooling order raises a serious question concerning what date should be used in establishing the priority of such a lien. The traditional construction or repair contract is usually completed within a few months, or at most a few years. On the other hand, charges for the *operation* of a well may accrue for decades under a single operating agreement or forced pooling order. This distinction is important because § 142 provides that a mechanics' and materialmen's lien is perfected by filing a lien statement in the County Clerk's office where the well is located,

> ... within four (4) months after the date upon which material ... was last furnished or labor last performed under contract as aforesaid.

Without some limits it would be possible, even likely, that the priority of a oil and gas lien operator's lien could relate back many years before the operator filed its lien statement. For example, ANR claims that its liens have priority from October 1981, although ANR did not file its lien statement until July 1989.

## I.

■ We first must examine an issue of first impression: How are liens created under 52 O.S.1981 § 87.1(e) perfected?

Both the trial court and the Court of Appeals held that § 87.1(e) created a lien separate from and independent of the lien created by § 144. ANR contends that § 87.1(e) creates an independent lien that is perfected upon entry by the Commission of a forced pooling order.[4] We disagree with both analyses.

Oklahoma incorporated § 144's predecessor into its law at statehood as part of its general mechanics' and materialmen's statutes, 42 O.S.1981 §§ 141 et seq. Since

---

4. 52 O.S.1981 § 87.1(e), provides a lien in the following language:
   ... The operator of such [force pooled] unit ... shall have a lien on the mineral leasehold estate or rights owned by the other owners therein and upon their shares of the production from such unit to the extent that costs incurred in the development and operation upon such unit are a charge against such interest by order of the Commission or by operation of law....

statehood § 146 of those statutes has expressly provided that § 144 liens will be "filed and enforced in the same manner" as other mechanics' and materialmen's liens.[5]

The legislature passed the predecessor to § 87.1(e) in 1947 as part of a substantial revision of the Oklahoma Oil and Gas Conservation Act, 52 O.S. §§ 81 et seq. Section 87.1(e) empowers the Corporation Commission to force pool the interests of mineral owners in common sources of supply to prevent unreasonable drainage and waste. Operators under a forced pooling order are given a lien for development and operating costs against other working interest owners under § 87.1(e). Section 87.1, however, is silent as to how liens created under its terms are to be perfected.

ANR argues that, because § 87.1(e) is silent about how a lien is perfected, its liens were automatically perfected when the Commission entered the forced pooling orders. We disagree. ANR perfected its oil and gas liens against Appleby by filing them in the Caddo and Washita County Clerks' offices under § 146 on July 14, 1989. We find nothing in the lien statutes or the cases interpreting them to credibly support ANR's claim that § 87.1(e) liens are automatically perfected upon filing in the Commission of the forced pooling orders creating them. Because § 146 provides the only statutory mechanism for enforcing statutorily created oil and gas liens, we conclude that the legislature intended that § 87.1(e) liens be perfected and enforced under the terms of § 146 in the same way as § 144 liens are enforced. While § 144 and § 87.1(e) liens differ to the extent that § 144 covers labor and materials, and § 87.1(e) covers operating charges, both arise from oil and gas operations, which may go on for many years. Given these circumstances, we believe the legislature would have said so had it intended that § 87.1(e) liens be enforced differently than § 144 liens.

## II.

We must now interpret the lien statutes to arrive at the date of priority of ANR's liens. The parties disagree over what date should be used as the date of perfection of ANR's liens under § 142. ANR claims that it perfected its liens on April 30, 1987, when it filed its counterclaim. We reject this contention. There is no statutory authority allowing perfection of a lien on this basis. We hold that ANR did not perfect its liens until it filed them in the offices of the Caddo and Washita County Clerks, on July 14, 1989.

Section 141 says mechanics' and materialmen's liens

> ... shall be preferred to all other liens ... which may attach ... subsequent [to the date labor or materials are first furnished].

ANR first furnished labor or materials that Appleby did not pay for on June 25, 1980. Thus, according to ANR, its liens have priority from that date, although ANR's liens were not perfected until July 14, 1989. We disagree with this analysis because it does not consider 42 O.S.1981 § 23, which states:

> A lien is extinguished by the mere lapse of time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation.

We have not previously considered what effect § 23 has on establishing priority of mechanics' and materialmen's liens. Today we will establish some guidelines.

Section 23 requires us to examine the statute of limitations applicable to ANR's claims upon which their liens were based. The relationship between Appleby and ANR in the wells at issue here was based on an implied contract arising under a statute. Consequently, the three-year statute of limitations governing implied contracts

5. 42 O.S. § 146 was substantially revised in 1983, and further revised in 1985 and 1990. These revisions, however, did not change the substance of the act. Section 146 continues to provide that contractors' oil and gas liens will be filed and enforced as are other mechanics' and materialmen's liens.

and liabilities created by statute, 12 O.S. 1981 § 95, Second, applied.[6]

■ Appleby and ANR clearly intended that ANR would submit monthly statements for its charges and that Appleby would pay them. Appleby paid ANR's monthly statements in the early stages of the drilling and operation of the wells. Thus, the parties treated ANR's bills as statements of an open, running account. "The statute [of limitations] commences to run on an open running account at the time of the entry thereof." *Pitts v. Walker*, 188 Okla. 17, 105 P.2d 760, 761 (1940). Where a contract provides for installment payments, and the payee has a right to sue upon default on any payment, the statute of limitations on each installment begins to run from the date of the payor's failure to make the payment. *Turk v. French*, 202 Okla. 60, 210 P.2d 154, 156 (1949). ANR does not contend that it could not have sued Appleby as each monthly billing was unpaid. The record will not support any such interpretation of the parties rights and obligations. Appleby made his last payment to ANR in 1981. Thus, sometime in 1984, ANR's right to sue on unpaid statements over three years old was barred by the statute of limitations. When ANR perfected its liens in July 1989, its unpaid statements submitted before July 1986 were barred.

The dissent's reliance on *Noble Foundation v. Vick*, 840 P.2d 619 (Okla.1992), is misplaced. The dissent proposes that ANR's claim is based on a construction contract so the statute of limitations could not start to run until ANR ceases operating the wells, although ANR's operations may not cease for thirty, forty, or more years. The adoption of the dissent's proposal would judicially repeal § 23 with respect to operators of producing oil and gas properties.

This appeal presents an entirely different situation from the one we dealt with in *Vick*. There we held that a *land owner's* cause of action against a contractor for breach of a construction contract for defective work did not begin to run until the contract was completed. In *Vick*, we stated, "The rationale behind this rule [that the statute of limitations does not begin to run on a construction contract until the project is completed] "is that there is no breach for defective performance if the defects can be remedied by the date of completion [of the construction contract]." Id. 840 P.2d at 622. *Vick*'s teachings are inapposite to this case. The dissent does not suggest a reason, and we see none, for delaying the starting of the statute of limitations on unpaid accounts until the completion of a construction project because the billings were for work done on that project. We certainly did not intend for the *Vick* rule to apply in cases such as this one, where unpaid labor and material bills used to establish lien priority, covered work done years longer before the filing of the competing lien than the length of the statute of limitations governing suits on accounts.

In *Russell v. Flanagan*, 544 P.2d 510, 512 (Okla.1975), we held that a contractor's cause of action for non payment of its billings differs from a land owner's cause of action against a contractor for breach of warranty arising out of defective materials or workmanship. There, we interpreted 12 O.S.1971 § 936, which calls for an attorney fee to be awarded to the prevailing party in "any civil action to recover on an ... account ... for labor or services." We held:

> For the instant action, plaintiff [land owner] sought judgment for breach of warranty [against a plumbing contractor]. While this may be an action collaterally concerning labor or services, *it is not a civil action for labor or services* within the meaning of the statute, and

6. 12 O.S.1981 § 95, Second provides:
   Civil actions ... can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

   .      .      .

   Second: Within three (3) years: An action upon a contract, express or implied not in writ-

ing; an action upon a liability created by statute other than a forfeiture or penalty ...

§ 936 is, therefore, inapplicable. [Emphasis added.]

Thus, ANR's cause of action underlying its lien claims here is entirely different from the sort we dealt with in *Vick*, which would have involved a land owner's cause of action against ANR for furnishing defective workmanship or materials. The *Vick* exception applies only to suits by land owners against contractors, not to suits for unpaid laborers' or materialmen's bills.

We must interpret lien laws so as to enable lien holders and potential lenders to perfect liens and know their rights in a simple straightforward way. Potential lenders are entitled to know that if they check the County Clerk's records and those records show no prior laborers' and materialmen's liens, the lenders' exposure is limited to liens perfected within the applicable statute of limitations for suits on accounts. To apply *Vick* here would be declare that an oil and gas operator's laborers' and materialmen's liens could be perfected at any time and would relate back to the date such labor or materials were first furnished, though that date may have been thirty, forty, or more years prior to the date the operator perfected its lien. This we decline to do.

■■■ Clearly, § 23 prohibits creditors from claiming a lien on charges that have been barred by the applicable statute of limitations. When the statute of limitations bars a debt, that bar serves to extinguish any lien securing the debt. *State v. Hall*, 191 Okla. 257, 128 P.2d 838, 840 (1942). There is no rational basis for allowing a lien holder to rely on a debt that has been barred at the time he perfects his lien to establish the priority of his lien. We hold, therefore, that the priority of a mechanics' and materialmen's lien runs from the earliest date labor or materials are furnished, a claim for payment of which is *not barred by the applicable statute of limitations on the date the lien is perfected*. In other words, only labor or materials furnished within the applicable statute of limitations on the day a mechanics' or materialmen's lien is perfected may be used to establish the date of priority of the lien.

ANR did not properly perfect its liens until it filed them in the Caddo and Washita County Clerks' offices on July 14, 1989. Because ANR had a cause of action on each of the operator's bills it submitted to Appleby, each of ANR's unpaid monthly bills to Appleby was barred by the statute of limitations after three years under § 95, Second. Thus, the earliest possible date of priority of ANR's liens was July 14, 1986, three years before it perfected its liens on July 14, 1989. Bank perfected its mortgages when it filed them for record between April 4, 1983 and February 6, 1984. Because Bank filed its mortgages *before* July 14, 1986, Bank's liens take priority over ANR's liens.[7]

The trial court's judgment holding that ANR's liens were superior to Bank's mortgages is reversed. We remand the matter to the trail court with instructions to enter judgment for Bank on its mortgages.

### III.

The attorney's fee issue remains, although the outcome concerning it has changed. Because ANR is not the prevailing party under § 176 we reverse the trial court's judgment granting an attorney's fee to ANR.

■■ We must decide whether Bank, as prevailing party on ANR's lien claim, is entitled to an attorney's fee to be taxed as costs under § 176. There is, of course, no question about Bank's right to an attorney's fee against Appleby under its notes and mortgages. Bank, however, is not entitled to an additional fee against ANR

---

7. Despite the fact that Bank, the subsequent lender, prevailed here, we have misgivings about the statutory oil and gas lien scheme as presently cast. As noted above, statutory oil and gas liens are governed by a three year statute of limitations, 12 O.S.1991 § 95, Second. This means that the operator of an oil or gas well might file a lien years after the subsequent lender takes its mortgage, and establish priority on a date three years earlier than the date the operator filed its lien. The potential for uncertainty among lenders this situation creates concerns us, but we can not rewrite the lien statutes, we may only interpret them.

under § 176. *Voelkle v. Sisemore*, 338 P.2d 1080 (Okla.1959) is dispositive of this issue.

In *Voelkle*, a mortgagee obtained judgment and an attorney's fee against his mortgagor. The mortgagee had joined other lien claimants to perfect its title against them. There, as here, the mortgagee prevailed against a lien claimant who had filed a counterclaim in which he asserted that his lien was superior to the mortgagee's mortgage. We held that the mortgagee was not entitled to an attorney's fee against the other lien claimant besides the fee to which he was entitled from the principal defendant as part of his judgment on the note and mortgage. We based our holding on the fact that the primary subject of a foreclosure action is against the mortgagor and the property securing the debt, and that clearing junior liens is a part of the task of foreclosure. A lien claimant in a mortgage foreclosure action is an "incidental defendant," although he files a counterclaim. The attorney's fee awarded the mortgagee in the principal action, therefore, should include a fee for the time and effort expended in clearing junior liens. *Voelkle*, Id., 338 P.2d at 1082–83.[8] Under such circumstances, the mortgagee is not entitled to an additional attorney's fee from the unsuccessful lien holder under § 176. The rule applies here. Bank is not entitled to an attorney's fee from ANR.

CERTIORARI PREVIOUSLY GRANTED, COURT OF APPEALS' OPINION VACATED, TRIAL COURT'S JUDGMENT REVERSED, MATTER REMANDED WITH INSTRUCTIONS.

HODGES, C.J., and SIMMS, HARGRAVE and KAUGER, JJ., concur.

LAVENDER, V.C.J., and OPALA, ALMA WILSON and SUMMERS, JJ., concur in part, dissent in part.

SUMMERS, Justice, concurring in part and dissenting in part:

Although I concur in portions of the opinion I must respectfully dissent from the Court's conclusion that ANR's lien is ineffective as to any material or services provided more than three years before the lien was perfected by filing. Our recent case of *Samuel Roberts Noble Foundation v. Vick*, 840 P.2d 619 (Okla.1992) and the earlier decisions on which it relies should dictate a different result.

The majority reasons that the oral agreement between the operator of the oil well and Appleby is the obligation upon which the lien is based. Under 12 O.S.1991 § 95, this obligation—an oral contract—has a three-year statute of limitation. Title 42 O.S.1991 § 23 states that liens are extinguished when the rules governing civil procedure (or more specifically for purposes of this case—the statutes of limitations) dictate that suit may no longer be brought on the principal obligation. The majority opinion then makes the legally insupportable leap that Section 95 bars ANR's lien for services which occurred more than three years before the lien was perfected by filing. This conclusion is not only contrary to this Court's holding in *Vick* and *Clark v. Oklahoma Electric Co.*, 144 Okl. 21, 288 P. 935, 937 (1930), but it disregards the plain language of the governing statutes.

In *Vick* the central question was when the statute of limitation began to run on a written construction contract. We held that the statute of limitations for a written construction contract does not begin until the construction is completed. The contractor urged that the breach of contract action was barred because the action was brought five years after his portion of the construction was completed. We held that the limitations period did not begin when the individual subcontract was completed, but when the construction of the entire building was completed.

The obligation in favor of an operator of an oil or gas well is Corporation Commission imposed, rather than purely contractual. The duty to operate under such a Com-

---

**8.** To the same effect as *Voelkle*, Id., see *Continental & Commercial Trust & Savings Bank v. Continental Supply Co.* 32 F.2d 740 (8th Cir. 1929); and *Henry v. Harris*, 206 Okla. 357, 243 P.2d 663, 667 (1952), both of which we followed in *Voelkle*.

mission order is a continuing one. Section 23 requires that a lien be extinguished when the statute of limitations bars recovery on the underlying obligation. Here, the underlying obligation was an agreement for the provision of ongoing services. According to *Vick* and its predecessors, the statute of limitations does not begin to run until the work required under the contract is completed. ANR's work as the operator of the well under its contract has not yet been completed (as far as we know). The Bank agrees that ANR's services were ongoing. The statute of limitations did not begin to run until ANR's services were complete. Thus, Section 23 does not bar recovery on the underlying obligation. In so holding, I do not advocate a "repeal" of Section 23. Section 23 simply does not operate to bar ANR's lien.

The relevant statutes, 42 O.S.1991 §§ 142 and 144, state that the operator's lien *shall attach as of the date of commencement, but filing is not required until four months after the last date that material or labor is furnished*. The statute also provides that compliance with these statutes shall constitute constructive notice to all purchasers and encumbrancers as of the first date that material is furnished. These statutes, designed to specifically address the liens of operators, are clear that the lien attached—although not yet filed—the date the services are commenced. Perfection is not required until four months after the services are completed. While the majority would re-write the language of the statutes to avoid a long delay in filing, my conclusion is that the clear language of the statutes must be followed.

In *Clark v. Oklahoma Electric Co.*, 288 P. at 937, we expressly stated that materialman's and mechanic's liens for oil and gas well operators differ from other materialman's liens because of the clear statutory language creating the liens. There, in holding that electricity provided over a twenty-two month period was not protected by a materialman's lien, we noted the difference in the statutes which created distinct type of materialman's liens, and specifically excepted from the holding those situations arising out of the continued operation of an oil and gas well. We explained that when an operator is providing continued services, the express language of the governing statutes provides that the date of attachment of a lien for ongoing services was the date the services were first provided.

In *Industrial Tile Co. v. Home Fed. Sav. & Ln Ass'n*, 331 P.2d 918 (Okla.1958), we held that a lien for materials and labor attached as of the commencement of the building. This lien has priority over a subsequent encumbrance which was imposed during the course of the construction but prior to the expiration of the period provided for filing the lien. We have also held that where materials are furnished at different times, but all for the same general purpose, the lien will relate back to the first purchase and cover all the material provided. *Chickasha Cotton Oil Co. v. Standard Lumber Co.*, 175 Okl. 15, 52 P.2d 816 (1936). Even more convincing is *Cyclone Drilling & Workover Inc. v. Woods*, 671 P.2d 688, 690 (Okla.Ct.App. 1983) (approved for publication by the Supreme Court), which interpreted Section 144 as follows:

A close reading of [Section 144] discloses that when an oil and gas lien is timely filed, it refers back and applies from the date the first time of material is furnished to the lease or *the date the first labor or services are performed on the lease*. (Emphasis added)

In *Atlas Supply Co v. Bank of Commerce of Okmulgee*, 101 Okl. 57, 223 P. 159 (1924), we addressed the question of priority as between a supplier of oil and gas material and a mortgagee. We held that when the supplies are furnished on a ongoing basis as required in the operation of the well, that lien is superior to the mortgage. However, only those supplies provided before the date of the mortgagee's recording of the mortgage can be the subject of the priority lien.

Under the current language of statutes, the *Atlas* conclusion would be slightly different because the statutes expressly state that the materials furnished on an ongoing

basis have priority as of the first date the materials are provided. However, *Atlas* is important to show that a lien for supplies can have priority even though it has not been filed if the time for filing has not expired. *See also Okla. Tool & Supply Co. v. Smith*, 118 Okl. 228, 246 P. 1090 (1926). In the present case, under the language of Section 142, the time for filing the lien had not expired.

In *In re George Rodman*, 38 B.R. 822 (1984), the bankruptcy court held that under Oklahoma law, an open account for the supply of material to an oil and gas rig provided lien rights to the supplier starting on the date that the first supplies are provided. This lien continued until the lien statement is filed or the time for filing expires. Thus, regardless of whether ANR's operations are characterized as an "open account," the critical fact is that ANR was providing ongoing services in *the operation of a well. Rodman* correctly held that the lien rights relate back to the first day supplies are provided.

These cases are contrary to the majority's position that only those services within three years from the filing date are recoverable by way of a materialman's lien. Instead, the last date of services or materials supplied relate back to the date that material was first supplied. Section 144 states that this lien shall be preferred over all other liens or encumbrances which arise subsequent to the day the first labor is furnished. It is this first date which is relevant for the purposes of priority. There are no cases in Oklahoma which would require the filing of a lien statement every three years, and which would essentially create a new lien every three years. Rather, this "relation back" doctrine permits only *one lien* for services and material provided under *one contract*. This interpretation of the lien statutes is consistent not only with the plain language of the statutes but also with cases like *Vick* and *Chickasha Cotton Oil.*

The majority's position forces ANR to file a lien before his services are completed. Case law holds that any lien statement filed before the completion of the work would be premature and thus the lien would be unenforceable. In *Davis v. Bullard*, 32 Kan. 234, 4 P. 75 (Kan.1884), the lien statement was filed prior to the completion of the building. The court held that the premature filing made the lien unenforceable. *See also Chicago Lumber Co. v. Tomlinson*, 54 Kan. 770, 39 P. 694 (1895); *Conroy v. Perry*, 26 Kan. 472 (1881).

The majority's apparent concern with this rationale is that it believes there would be a harsh result to a mortgagee. However, a mortgagee who takes as collateral for a loan an interest in oil and gas is not different than other encumbrancers. All encumbrancers are deemed to have constructive notice of the materialman's lien. 43 O.S.1991 § 144. The legislature made that clear, and it is not the duty of this Court to re-write statutes to overrule the legislature. It will not impose an unreasonable task for a mortgagee to check with an operator as to any existing lien which may exist for services rendered, even though it has not been filed. The Bank took security interests in Appleby's oil and gas interests. The Bank's mortgages were taken after the forced pooling order by the Commission, so the Bank had notice that wells were being drilled or operated. *The Bank,* in its brief, *concedes that the duty to inquire has arisen before with regard to the materialman's lien of oil and gas well operators.* With this sequence of events, I do not believe such a result is harsh, but rather is consistent not only with the knowledge and practice of the Bank, but also with statutory language and prior case law.

I am authorized to state that V.C.J. LAVENDER and J. OPALA join in these views.