**LADDER ENERGY COMPANY,**
Appellee,

v.

**INTRUST BANK, N.A., formerly First National Bank of Wichita, Kansas, Appellant.**

**No. 86042.**

Court of Appeals of Oklahoma,
Division No. 3.

Oct. 18, 1996.

Certiorari Denied Dec. 19, 1996.

Guy Clark, Northcutt, Clark, Gardener, Hron & Powell, Ponca City, for Appellant.

Michael J. Blaschke, Philip A. Schovanec, Moricoli, Harris, Cottingham & Hurst, Oklahoma City, for Appellee.

## MEMORANDUM OPINION

GARRETT, Judge:

Ladder Energy Company (Appellee or Ladder) sued W.M.A. Corporation (WMA), Intrust Bank, N.A., formerly First National Bank of Wichita (Appellant or Bank), Total Petroleum, Inc. (Total Petroleum) and Western Gas Resources, Inc. (Western Gas). Ladder sought to foreclose a statutory lien against certain oil and gas leases. Ladder alleged WMA, Bank, Total Petroleum and Western Gas claimed an interest in the leases, but their interests were junior and inferior to Ladder's.[1] The court entered judgment finding Ladder and Bank had statutory liens, but Ladder was entitled to the money held by Western Gas and/or Total Petroleum as suspended revenues from the sale of oil and gas from the leases. The issue in this appeal is whether Ladder's lien as operator of the well or Bank's lien, which was prior in time, is superior.

WMA was the owner of a working interest in various oil and gas leases in Grant County, Oklahoma. In 1987, WMA executed and delivered its promissory note to Bank. The note was secured by a mortgage and security agreement on the oil and gas leases. From 1987 to 1993, WMA was the operator of the leases. In 1993, the other working interest owner, Rangeline Corporation,[2] instituted an action against WMA, seeking its removal and the appointment of a new operator. WMA was removed and Ladder was appointed as operator of the leases. Bank was not a party to that prior litigation. After Ladder assumed its duties as operator, there were several disputes between it and WMA regarding the payment of operating expenses. In 1994, Ladder filed an oil and gas lien against WMA.

The leases produced approximately equal amounts of oil and gas, based on value. The oil was purchased by Total Petroleum and the gas was purchased by Western Gas. After the oil and gas lien was filed, Western Gas suspended payment of the gas revenues pending a determination of the priorities. Total Petroleum released monthly oil revenues to Ladder as the operator in the aggregate amount of $33,700.15 which was applied by Ladder to WMA's operating expenses. After application of the oil revenues, the total amount claimed by Ladder as operator was $33,105.67.

---

1. Ladder also sued WMA for breach of contract as operator. The court found WMA and its successors were barred from asserting an interest in the leases, however this issue was not appealed.

2. Rangeline Corporation is not a party to this action.

In entering judgment, the court made findings and conclusions of law which were, in pertinent part, as follows:

6. Further, Intrust Bank's mortgage lien extends only to working interests. Intrust Bank cannot succeed to a greater interest in the Leases than its mortgagor.

7. "Proceeds" in this context can only mean net proceeds.

\* \* \* \* \* \*

9. Ladder is entitled to reimbursement of all of its outstanding lease operating expenses in the sum of $33,105.68. Such may be recouped from the suspended revenues of Western Gas Resources, Inc. The remainder of such suspended revenues are payable to Intrust Bank, N.A.

■ Bank contends the court erred because its prior recorded mortgage and security interest is superior to Ladder's subsequent operator's oil and gas lien. It contends, in effect, that it is entitled to *all* suspended revenues. Bank relies on 42 O.S.1991 § 144 which provides:

\* \* \* \* \* \*

Such lien shall be preferred to all other liens or encumbrances which my attach to or upon said leasehold for oil and gas purposes and upon any oil and gas pipeline, or such oil and gas wells and the material and machinery so furnished and the leasehold for oil and gas purposes and the fixtures and appliances thereon *subsequent to the commencement of* or the furnishing or putting up of any such machinery or supplies: (Emphasis supplied.)

\* \* \* \* \* \*

Bank contends this statute shows Ladder's lien is inferior to Bank's interest.

■ The court found that Bank can only be a mortgagee upon the interest owned by its mortgagor, WMA. Evidence below showed that WMA had a working interest in the oil and gas leases. There is no contention that WMA did not have authority to mortgage its interest. Indeed, both parties agree WMA could do so. Their disagreement is over exactly what Bank took when WMA did so. It is fundamental that a party may not mortgage an interest in property greater than that which it owns. See, *May v. Archer*, 302 P.2d 768 (Okl.1956); *Boys v. Long*, 268 P.2d 890 (Okl.1954). Further, a party cannot give a valid mortgage in property in which it has no interest. See, *Linton v. Citizens State Bank*, 361 P.2d 1071 (Okl. 1961). WMA could only give only a valid mortgage or security interest on the working interest which it owned, and any mortgage it gave would be subject to the same rights and liabilities of that working interest.[3] Its mortgagee, Bank, could not take more.

While it is clear that Bank's mortgage and security interest are prior in time to the interest of Ladder, Bank's interest is subject to the obligations and liabilities of the interest held by WMA. Those obligations and liabilities include paying for the costs of development and exploration, which is what the court awarded Ladder. The trial court's decision was not against the clear weight of the evidence, contrary to law or against equitable principles. *Story v. Hefner*, 540 P.2d 562 (Okl.1975).

■ Bank contends the court erred when it awarded attorney fees to Ladder and against it.[4] While 42 O.S.1991 § 176 allows a successful lien claimant to recover attorney fees in a lien foreclosure, Bank contends no such attorney fees may be recovered between *competing* lien claimants, such as it and Ladder. However, in applying 42 O.S. 1991 § 176, it has been held that where competing lien claimants are "the real adversaries seeking a judicial determination of conflicting claims, the successful lien claimant is entitled to recover a reasonable attorney fee to be taxed as costs against the losing lien claimant." *Travis v. Del State Bank*, 430 F.Supp. 312 (W.D.Okl.1976); see also, *LPCX Corp. v. Faulkner*, 818 P.2d 431 (Okl.1991). We see no error in the court's award of attorney fees against Bank in so far

3. A working interest in a well is typically subject to all the costs of exploration and development. See, *TXO v. Commissioners of the Land Office*, 903 P.2d 259 (Okl.1994).

4. The court also awarded attorney fees to both Ladder and Bank against WMA, this is not appealed.

as an application for such fees was timely made pursuant to 12 O.S.1991 § 696.4(B). That statute provides:

> If attorney's fees, costs or interest have not been included in the judgment, decree or appealable order, a party seeking any of these items must file an application with the court clerk along with proof of service of the application on all affected parties in accordance with Section 2005 of this title. The application must set forth the amount requested an include information which supports that amount. *The application must be filed within thirty (30) days after the filing of the judgment, decree or appealable order.* If the judgment, decree or appealable order shows that the matter was taken under advisement, the application must be filed within thirty (30) days after the date of mailing copies of the judgment, decree or appealable order as shown by the Certificate of Mailing. For good cause shown, the court may extend the time for filing the application upon motion filed within the time the application could be filed. Within fifteen (15) days after the application is filed with the court, any party may file written objections to it, with a copy to the moving party.

The parties agree that the initial application for attorney fees was timely filed by Ladder within the time period set by § 696.4(B). However, after that application for attorney fees was granted by the court, Ladder filed a second request for attorney fees more than thirty days after the judgment. This was outside the statutory time period and it was error to award any attorney fee pursuant to that second application. Ladder argues, in effect, that the second application for attorney fees "relates back" to the first application. To allow a party to request attorney fees for the work done in connection with the first attorney fee request might spawn a third application for work done in connection with the second application and so on *ad infinitum.* That portion of the judgment must be reversed.

Ladder requests attorney fees on appeal. The request is denied. Each party shall pay their own fees and expenses in this appeal.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED for further proceedings consistent with this opinion.

CARL B. JONES, P.J., and ADAMS, V.C.J., concur.