2004 OK CIV APP 62

**TCINA, INC., an Oklahoma corporation, Plaintiff/Appellee,**

v.

**NOCO INVESTMENT CO., INC., an Oklahoma corporation, Defendant/Third Party Plaintiff/ Appellant,**

and

**Grant Oil and Gas Corporation, an Oklahoma corporation, and Lexus Petroleum Company, Inc., Defendants.**

No. 97,482.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 13, 2004.

Certiorari Denied June 28, 2004.

**194**

Larry Jay McMains, Johnston & McMains, Seminole, OK, for Appellee.

Robert A. Huffman, Jr., Rodney A. Edwards, Melissa Mailath, Edwards & Huffman, L.L.P., Tulsa, OK, for Appellant.

JOHN F. REIF, Presiding Judge.

¶ 1 The issue on appeal concerns the priority of conflicting liens asserted by TCINA, Inc., and NOCO Investments against the working interest of Grant Oil & Gas Corporation in a secondary recovery unit known as the Fleet–Osborn Gilcrease Unit. This unit, located in Seminole County, was approved by the Oklahoma Corporation Commission on January 27, 1981, and was operating during the time the conflicting lien claims arose. In the trial court, TCINA stressed that the lien it seeks to enforce is based on 52 O.S.2001 § 287.8 which grants a first and prior lien on participating interests in the unit for the operating expenses of the unit. There was no dispute that Grant Oil & Gas was delinquent in paying operating expenses assessed to its working interest. NOCO asserted priority, the statutory language notwithstanding, based on a mortgage filed December 31,

1999, which predates TCINA's commencement as operator. NOCO also asserts that even if TCINA did perform operating services prior to the recording of the NOCO mortgage, TCINA never filed a lien statement to perfect a lien. The trial court ruled that the statutory operating expense lien had priority and NOCO appeals.

¶ 2 NOCO contends that the only way the trial court could find the statutory operating expense lien had priority over its mortgage was to treat the lien as automatically perfected upon the land-record filing of the order approving the unit. Citing *Fourth National Bank of Tulsa v. Appleby*, 1993 OK 153, 864 P.2d 827, NOCO points out that the Oklahoma Supreme Court refused to recognize automatic perfection of a similar operating expense lien granted by 52 O.S.1981 § 87.1(e) to the operator of a forced pooled unit. In *Appleby*, the Oklahoma Supreme Court concluded that "the legislature intended that § 87.1(e) liens be perfected and enforced under the terms of [42 O.S.1981] § 146 in the same way as § 144 [oil and gas labor/material] liens are enforced." *Id.* at ¶ 16, 864 P.2d at 832. Noting that both liens arise from oil and gas operations which may go on for years, the court further stated, "we believe the legislature would have said so had it intended that § 87.1(e) [forced pooling operator] liens be enforced differently than § 144 [oil and gas labor/material] liens." *Id.*

¶ 3 Admittedly, the lien given by § 287.8 is like the liens under § 87.1(e) and § 144 in that it "arise[s] from oil and gas operations, which may go on for many years." *Id.* at ¶ 16, 864 P.2d at 832. However, it is also significantly different in that the legislature expressly and unconditionally declared the § 287.8 lien to be a first and prior lien. The term "first lien" is a legal term of art meaning a lien which takes priority or precedence over other charges or encumbrances upon the same piece of property and which must be satisfied before such other charges are entitled to participate in the proceeds of the property's sale. *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1022 n. 9 (11th Cir.1995) (citing BLACK'S LAW DICTIONARY (6th ed.1990)).

¶ 4 In providing a first and prior lien against participating leases and interests for unit operating expenses, the legislature was

protecting the mutual dependency of the participating leases and interests under the "pay as you go" plan the legislature had provided for unit operation. A first and prior lien is absolutely essential to preserve the fiscal integrity of the unit in that (1) the unit must operate "without profit to the unit," § 287.8, and (2) the unit cannot acquire, hold, or possess real or personal property for its own account, but does so only as agent for the several lessees, 52 O.S. § 287.9.

¶ 5 The granting of a first and prior lien also protects owners of royalties, overriding royalties, or other non-burdened interests who pay or are charged with delinquent operating expenses allocated to their participating lease or interest. Without such preferred lien status, under § 287.8, a royalty owner's subrogation to all the rights of the unit with respect to the interest or interests primarily responsible for the delinquent assessment would be virtually meaningless.

¶ 6 The fact that § 287.8 does not address perfection does not affect the priority of the lien assigned by the statute. "[A] lien declared by positive statute is not dependent for its existence upon subsequent acts requisite to its enforcement." *City of Santa Monica v. Los Angeles County*, 15 Cal.App. 710, 115 P. 945, 946 (1911). In declaring the lien under § 287.8 to be a first and prior lien in favor of the unit, we believe the legislature intended to burden the participating leases and interests from the inception of the unit with the operating expenses that would be incurred from time to time. We also believe a land-record filing reflecting approval of the unit and the participation of particular leases or interests would be sufficient perfection. Such a filing imparts notice to third parties that any lien or interest the third party may acquire in a participating lease or interest would be subordinate to the unit's statutory lien.

¶ 7 Given the nature of the lien in question, it is inconsequential *when* TCINA became operator or performed services. The relevant inquiry is TCINA's relationship to the unit at the time of enforcement of the lien, and not the timing of any particular work by TCINA. As stated in *Young v. West Edmond Hunton Lime Unit*, 1954 OK 195, ¶ 19, 275 P.2d 304, 309: "The unit organization with its operator stands in a position similar to that of a trustee for all who are interested in the oil production either as lessees or royalty owners." The same can be said for the recovery of delinquent operating expenses by enforcement of the statutory lien given to secure the payment of same. Under Article 17.5 of the plan of unitization, any lessee who was charged to cover delinquent expenses of another lessee is due reimbursement for same "when the amount so [charged is] collected from the Lessees primarily chargeable therewith." Under Article 17.6 of the plan of unitization, the duty to enforce the lien for delinquent operating expense assessments, and the attendant duty to account for sums collected, devolves to the unit operator at the time the lien is enforced.

¶ 8 Based on the foregoing, we hold the trial court did not err in granting priority to the lien for unit operating expenses enforced by TCINA, Inc. Accordingly, the trial court is AFFIRMED.

COLBERT, C.J., and RAPP, J., concur.