2013 OK CIV APP 98

**GASROCK CAPITAL, L.L.C.,**
**Plaintiff/Appellant,**

v.

**ENDEVCO EUREKA, L.L.C.,**
**Basic Energy Services,**
**L.P., Defendants,**

and

**Kal Drilling Company,**
**Defendant/Counter-**
**Appellant,**

and

**Pan American Drilling Services,**
**L.L.C., Defendant/Appellee.**

**No. 110291.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 23, 2013.

Steven W. Bugg, John N. Hermes, McAfee & Taft, P.C., Oklahoma City, Oklahoma, and James R. Wetwiska, admitted pro hac vice, Holli V. Pryor–Baze, admitted pro hac vice, Akin Gump Strauss Hauer & Feld, L.L.P., Houston, Texas, for Plaintiff/Appellant.

Bradley D. Brickell, Brickell & Associates, P.C., Norman, Oklahoma, for Defendant/Appellee.

Pan American Drilling Services, L.L.C., William A. Johnson, David A. Elder, Matthew W. Brockman, Hartzog Conger Cason & Neville, Oklahoma City, Oklahoma, for Defendant/Counter-Appellant.

Kal Drilling Company, Christopher J. Petersen, Oklahoma City, Oklahoma, for Defendant, Basic Energy Services, L.P.

BAY MITCHELL, Judge.

¶ 1 This appeal presents a lien priority contest. Plaintiff GasRock Capital, L.L.C. (GasRock) appeals from an Order granting summary judgment in favor of lien claimant Defendant Pan American Drilling Services, L.L.C. (Pan American) in this foreclosure action.[1] In essence, this order determined Pan American's statutory oil and gas lien had priority over GasRock's mortgage lien on certain oil and gas leases and leasehold interests of EnDevCo Eureka, L.L.C. (EnDevCo). GasRock also appeals from the trial court's subsequent denial of its Motion to Vacate and Motion for New Trial[2] as well as the trial court's Order granting Pan American's Motion for Attorney Fees and Costs. Additionally, Defendant KAL Drilling Company (KAL) counter-appeals from the trial court's March 30, 2011 Partial Journal Entry of Judgment.[3]

¶ 2 EnDevCo is the unit operator[4] of certain oil and gas wells in a secondary oil and gas recovery unit in Cleveland County referred to as the West Short Junction Unit. EnDevCo and GasRock were parties to a 2006 "advancing term credit agreement" (providing for an advancing term loan of up to $30 million). The repayment obligation on this debt was secured by a mortgage lien and security interest in EnDevCo's oil and gas leasehold interests and production therefrom. The subject unit was formed pursuant to The Unitization Act of 1951, which is now codified at 52 O.S.2011 § 287.1, et seq.[5]

¶ 3 GasRock's mortgage lien was recorded on April 24, 2006, in Cleveland County. The area subject to GasRock's mortgage was in part, the same leasehold premises upon which Pan American and KAL subsequently furnished their respective drilling services on Well # 109 located on the property.

¶ 4 EnDevCo hired third-party contractors Pan American and KAL to drill the No. 109 well in the West Short Junction Unit located in the Southwest Quarter of Section 15–10N–R4W, Cleveland County, Oklahoma. Pan American commenced its work at that location on or about September 25, 2007. EnDevCo ultimately defaulted on its payment obligation to its lender GasRock as well as to its drilling contractors.

1. Pan American brought suit to enforce its lien in CJ–2009–1474 and GasRock brought suit in CJ–2010–135 to foreclose its mortgage. The cases were consolidated below.

2. A party's failure to raise an issue in the motion for new trial results in a failure to preserve the issue for appeal. 12 O.S.2011 § 991; *Sien v. Sien,* 1994 OK CIV APP 159, 889 P.2d 1268, 1274. We review a denial of a motion for a new trial for an abuse of discretion. *Broadway v. Peak Medical Oklahoma No. 5,* 2005 OK CIV APP 63, ¶ 5, 120 P.3d 872, 873.

3. GasRock's Amended Petition in Error attaches the trial court's March 13, 2012 Order, wherein it determined pursuant to 12 O.S. § 994 that the following orders shall be considered final judgments, decrees or final orders and that no just reason exists for delay in the appeal of same: (1) the trial court's March 30, 2011 Partial Journal Entry of Judgment (the subject of KAL's counter-appeal herein); (2) Supplemental Partial Journal Entry of Judgment filed September 14, 2011; (3) Journal Entry of Judgment filed October 28,

2011 (the subject of GasRock's appeal herein); and (4) the December 13, 2011 Order denying Motion to Vacate and Motion for New Trial.

4. Development and operation of a unit area for recovery of oil and gas from a common source of supply "may be carried on in whole or in part by the unit itself, or by one or more of the lessees within the unit area as unit operator subject to the supervision and direction of the unit...." 52 O.S.2011 § 287.4.

5. The purpose of this statutory scheme is "to authorize and provide for the unitized management, operation and further development of the oil and gas properties to which this act is applicable, to the end that a greater ultimate recovery of oil and gas may be had therefrom, waste prevented, and the correlative rights of the owners in a fuller and more beneficial enjoyment of the oil and gas rights, protected." 52 O.S. § 287.1 (footnote omitted).

¶ 5 After EnDevCo failed to pay Pan American for its services, Pan American filed its oil and gas lien statement in Cleveland County on July 8, 2008. The lien statement lists the amount of $1,558,377.51, plus interest and attorney's fees due as of July 2008. The lien statement additionally provides that Pan American furnished materials and labor "for and used in connection with the drilling of an oil and gas well located in the 12,000 acre drilling and spacing West Short Junction Unit comprised, in part, of the SW/4 of Section 15–10N–4W, Cleveland County, Oklahoma, said well being commonly referred to as the West Short Junction Unit # 109."

¶ 6 GasRock and Pan American sought summary adjudication of the priority of their respective lien. GasRock contends that because it recorded its mortgage prior to Pan American's commencement of drilling, it has "first in time" priority over mechanics' and materialmen's oil and gas well liens, in particular those filed pursuant to 42 O.S.2011 § 144.[6] Pan American primarily asserts its lien priority pursuant to 52 O.S. § 287.8, which grants "a first and prior lien" on participating interests in the unit for the operating expenses of the unit.[7]

¶ 7 Ultimately, the trial court determined Pan American's "labor and materialmen's lien" had priority over the mortgage of Gas-Rock as a matter of law. GasRock appeals from the trial court's denial of its Motion for Summary Judgment and the granting of Pan American's Counter–Motion for Summary Judgment.

¶ 8 Appellate courts review an award of summary judgment *de novo*, giving no deference to the trial court. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 11, 160 P.3d 959, 963. Summary judgment is only appropriate when there is no substantial controversy as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.* The reviewing court must view all inferences and conclusions that can be drawn from the facts in the light most favorable to the party opposing the motion. *Rose v. Sapulpa Rural Water Co.*, 1981 OK 85, ¶ 2, 631 P.2d 752, 754. We will reverse summary judgment if reasonable people could reach different conclusions from the undisputed material facts. *Lowery*, 2007 OK 38, ¶ 11, 160 P.3d at 963–64.

¶ 9 We find that material facts are undisputed and the applicable law (construed with the pertinent Plan of Unitization) provides Pan American with a statutory "first and prior lien," which has priority over Gas-Rock's mortgage lien as a matter of law. An oil and gas unit operator's statutory lien has priority over a mortgagee's lien regardless of the first-in-time recording of the mortgage. *TCINA, Inc. v. NOCO Investment Co., Inc.*, 2004 OK CIV APP 62, 95 P.3d 193, *cert. denied*; *Ladder Energy Co. v. Intrust Bank, N.A.*, 1996 OK CIV APP 126, 931 P.2d 83, *cert. denied* (rejecting bank's § 144 first in time argument and holding bank's mortgage secured by mortgagor's working interest in oil and gas leases was subject to obligations and liabilities of mortgagor's interest including the cost of development and exploration

6. Section 144 provides a lien for those contractors who furnish labor and materials used in drilling the oil and gas wells. "Such lien shall be preferred to all other liens or encumbrances which may attach to or upon said leasehold for oil and gas purposes ..." § 144. Those liens are effective from the date of the furnishing of the first item of material and the date of the performance of the first labor. *Reeves v. Jenkins*, 1968 OK 46, ¶ 8, 439 P.2d 941, 944.

7. Section 287.8 provides in pertinent part as follows:

Each unit created under the provisions of this act shall be a body politic and corporate, capable of suing, being sued and contracting as such in its own name. Each such unit shall be authorized on behalf and for the account of all the owners of the oil and gas rights within the unit area, without profit to the unit, to supervise, manage and conduct the further development and operations for the production of oil and gas from the unit area, pursuant to the powers conferred, and subject to the limitations imposed by the provisions of this act and by the plan of unitization.

Subject to such reasonable limitations as may be set out in the plan of unitization, the unit **shall have a first and prior lien** upon the leasehold estate and other oil and gas rights ... in and to each separately-owned tract, the interest of the owners thereof in and to the unit production and all equipment in the possession of the unit, to secure the payment of the amount of the unit expense charged to and assessed against such separately-owned tract. (Emphasis added.)

incurred by operator of leases after the bank's mortgage was recorded).[8]

¶10 GasRock attempts to distinguish this case from *TCINA, Inc.* on the basis that here Pan American is not a unit operator, but rather a third-party contractor hired by the unit operator, EnDevCo. GasRock would have us construe the Unit's § 287.8 lien protection as limited to the unit operator. Because, GasRock contends, the unit lien statute (§ 287.8) is unavailable to Pan American, GasRock's mortgage lien has priority under application of the general "first-in-time" rule applicable to liens authorized under § 144.

¶11 While the § 287.8 lien is silent on the issue of third-party contractor's lien rights, we note the unitization statutory powers conferred are expressly "subject to the limitations imposed by the provisions of [the] act and **by the plan of unitization.**" 52 O.S. § 287.8 (emphasis added). The Plan of Unitization for the West Short Junction Unit was created in 1961 and a notice of the Oklahoma Corporation Commission's approval thereof was filed of record in Cleveland County on January 4, 1962. The Plan of Unitization expressly provides the Unit with a "first and prior lien upon the leasehold interest ... to secure the payment of the Unit Expense." ¶11.8.[9] The Plan further provides in pertinent part as follows:

> The lien hereinabove provided for shall be for the use, benefit and protection of the Unit Operator or other Lessees **or Persons entitled to receive or share in the monies, the payment of which is secured thereby,** and in the event of failure of the Unit to enforce such lien, **the Unit Operator or other Persons entitled to the benefit thereof, shall be subrogated to the**

**lien rights of the Unit,** including the right of foreclosure.

*Id.* (emphasis added).

¶12 The Oklahoma Corporation Commission, in approving the Plan of Unitization in 1961, ordered that the entire unit area including any separately owned tracts therein, shall participate in the Unit, subject to the terms and provisions of the Unitization Plan. There is no question that the Corporation Commission had this power. *See* 52 O.S. § 287.2 (vesting the Corporation Commission with the "jurisdiction, power and authority," and the "duty to make and enforce such orders and do such things as may be necessary or proper to carry out and effectuate the purposes of this [Unitization] Act"). Title 52 O.S. § 287.9 appears to remove any doubt as to the availability of the § 287.8 lien to Pan American. It provides:

> Property rights, leases, contracts, and **all other rights and obligations** shall be regarded as amended and modified to the extent necessary to **conform to the provisions and requirements of this act and to any valid and applicable plan of unitization or order of the Commission** made and adopted pursuant hereto, but otherwise to remain in full force and effect.

§ 287.9 (emphasis added).

¶13 The Plan of Unitization, notice of which was filed of record decades prior to the recording of GasRock's mortgage, expressly provides for the broad extension of lien rights beyond the Unit operator to other "Persons entitled to the benefit" of the lien. Pan American, which was under contract with EnDevCo, the Unit Operator, to provide drilling services for the benefit of the Unit,

---

**8.** But see *Fourth Nat'l Bank of Tulsa v. Appleby,* 1993 OK 153, 864 P.2d 827 (holding bank's mortgage had priority over well operator's mechanics' and materialmen's liens for development and operating costs of oil and gas wells under forced pooling order). The issue of the first priority of 52 O.S. § 287.8 was not addressed in *Appleby,* presumably because the subject oil and gas producing property there was apparently not located within a unit subject to The Unitization Act.

**9.** The term "unit expense" is defined as "any and all cost, expense, or indebtedness incurred by the

unit in the establishment of its organization, or incurred in the conduct and management of its affairs or the operations carried on by it." 52 O.S. § 287.13(e). The Unitization Plan states "The Unit Operator in the first instance shall pay and discharge all cost and expense incurred in the development and operation of the Unit Area and in the conduct of the activities and affairs of the Unit. All such cost and expense incurred in the development and operation of the Unit Area shall be in accordance with this Plan of Unitization...." ¶11.1.

clearly falls within the category of persons[10] entitled to the benefit of the lien to recover its incurred unit expenses.

¶ 14 The Court of Civil Appeals noted this statutory lien is "significantly different" from other statutory liens such as the mechanics' and materialmen's lien under § 144 "in that the legislature expressly and unconditionally declared the § 287.8 lien to be a first and prior lien." *TCINA, Inc.*, 2004 OK CIV APP 62, ¶ 3, 95 P.3d 193, 194. "A first and prior lien is absolutely essential to preserve the fiscal integrity of the unit in that (1) the unit must operate 'without profit to the unit,' § 287.8, and (2) the unit cannot acquire, hold, or possess real or personal property for its own account, but does so only as agent for the several lessees." *TCINA, Inc.*, ¶ 4 (citing 52 O.S. § 287.9).[11]

¶ 15 In dispensing with the mortgagee's first-in-time argument, *TCINA, Inc.* provides, given the nature of the lien in question "it is inconsequential *when* " drilling services were performed on behalf of the unit (thereby incurring unit expenses) versus the timing of the mortgage recording. *Id.* at ¶ 7. The Court additionally determined "a land-record filing reflecting approval of the unit and the participation of particular leases or interests [constitutes] sufficient perfection" of the statutory first and prior lien. *Id.* at ¶ 6. Thus, the Court determined in *TCINA, Inc.* that the operator's failure to file a lien statement there immaterial to perfection of the statutory lien and/or its priority.

¶ 16 We note that a notice of the Corporation Commission's approval of the unit at issue herein has been on record in the Cleveland County Clerk's office since January 1962. "Such a filing imparts notice to third parties that any lien or interest a third party may acquire in a participating lease or interest would be subordinate to the unit's statutory lien." *Id.* at ¶ 6.[12] Pan American's first and prior lien was perfected as of the January 1962 notice and any subsequently acquired interest in a participating lease—such as GasRock's—is subordinate to the unit's statutory lien as a matter of law.

¶ 17 Because we find the trial court's lien priority determination correct in accordance with 52 O.S. § 287.8, we need not decide the alternate theories advanced by the parties pursuant to other statutory authority.[13]

■ ¶ 18 After Pan American was successful on its Counter–Motion for Summary Judgment, it sought recovery of attorney fees, which the trial court granted pursuant to 42 O.S. § 176[14] and 12 O.S. § 936. Upon consideration of the factors enunciated in *Burk v. Oklahoma City*, 1979 OK 115, 598 P.2d 659, the trial court awarded $104,262.40 as a reasonable attorney fee in favor of Pan American and against EnDevCo.

¶ 19 On appeal, GasRock seeks the reversal of the prevailing party attorney fee on the contingency of the reversal on the merits of the lien contest. Because we affirm the trial court's lien priority determination, Pan

---

10. The term "person" is defined as "any individual, corporation, partnership, common law or statutory trust, association of any kind, the State of Oklahoma or any subdivision or agency thereof acting in a proprietary capacity, guardian, executor, administrator, fiduciary of any kind, or any other entity or being capable of owning an interest in and to a common source of supply of oil and gas." 52 O.S. § 287.13.

11. With the legislature's declaration of the lien under § 287.8 as a first and prior lien in favor of the unit, the Court in *TCINA, Inc.* determined "the legislature intended to burden the participating leases and interests from the inception of the unit with the operating expenses that would be incurred from time to time." *TCINA, Inc.*, ¶ 6.

12. Thus, the alleged deficiencies in Pan American's 2008 lien statement are irrelevant to the priority of the first and prior § 287.8 lien, since it was deemed perfected upon the land-record

filing of notice reflecting approval of the unit in 1962.

13. While GasRock would have us ignore the "first and prior" statutory lien applicable to the subject oil and gas **unit** and instead apply the general materialmen's oil and gas lien of § 144, we follow the rules of statutory construction. Where two statutes may be construed to apply to the same subject matter, one specific and one general, the specific statute controls. *Phillips v. Hedges*, 2005 OK 77, ¶ 12, 124 P.3d 227, 231.

14. 42 O.S.2011 § 176 provides "[i]n an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

American's prevailing party status remains unchanged. We therefore affirm the trial court's March 13, 2012 Journal Entry of Judgment granting Pan American's Motion for Attorney Fees and Costs.

### KAL's Counter–Appeal

¶ 20 KAL was a party to a 2007 contract with EnDevCo wherein KAL agreed to provide services and materials in connection with the drilling of the # 109 well and EnDevCo agreed to pay for those services. Just as with Pan American, KAL commenced its drilling services subsequent to the recording of GasRock's mortgage. KAL's services were completed in January 2008. EnDevCo failed to pay over $2 million for KAL's drilling services and materials. KAL thereafter filed a lien statement on February 5, 2008, wherein it asserted a lien against the oil and gas leasehold interests underlying the unit.

¶ 21 Prior to the commencement of the present litigation, KAL filed suit in 2008 against EnDevCo (among additional defendants) in the U.S. District Court for the Western District of Oklahoma for amounts it claimed were due under the parties' drilling contract. KAL also sought foreclosure of its oil and gas lien against the interests of EnDevCo (and other working interest owners in West Short Junction Unit Well # 109), claiming priority over GasRock's mortgage lien.

¶ 22 Ultimately, the U.S. District Court for the Western District of Oklahoma entered its February 24, 2009 Order granting GasRock's Motion for Summary Judgment, which essentially determined that GasRock's mortgage lien had priority over KAL's 42 O.S. § 144 materialmen's liens. The order further provides that because the mortgage lien was recorded before KAL commenced its services the mortgage lien is "prior in time and hence superior to KAL's lien, absent some legal basis for a conclusion to the contrary."

¶ 23 GasRock cited the federal court's February 2009 Order as the primary basis for its Motion for Summary Judgment filed herein, which the trial court granted with the entry of its March 30, 2011 Partial Journal Entry of Judgment in favor of GasRock against KAL "in its entirety based upon the prior order in Case No. CIV–08–395, United States District Court for the Western District of Oklahoma." KAL counter-appeals from this determination.

¶ 24 KAL's counter-appeal of the summary adjudication of the priority contest between it and GasRock is a collateral attack on the federal district court's order. "When a federal-court judgment is attacked collaterally in a state court, it is entitled to the same faith and credit as that given to it under the applicable federal law. The facial validity of a federal judgment-a question that hinges on the presence of the three essential elements of jurisdiction-also is measured by federal law." *Veiser v. Armstrong,* 1984 OK 61, n. 5, 688 P.2d 796 (citing *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308). While KAL merely denies the preclusive effect of the federal district court's order entered against it prior to the instant litigation, it raises no jurisdictional challenge thereto. The only way a party can avoid the effect of claim preclusion as to bar the claims raised against the same parties in a prior lawsuit, would be by asserting the prior judgment was void for want of some jurisdictional element that has not been fully and fairly litigated. *Veiser v. Armstrong,* 1984 OK 61, 688 P.2d 796, 803.

¶ 25 The doctrine of collateral estoppel, or also commonly referred to as "issue preclusion," bars relitigation of an issue determined in a previous proceeding where there is an identity of parties in the former and latter action, or the parties in the former and latter actions are in privity. *Id.; Laws v. Fisher,* 1973 OK 69, 513 P.2d 876. "For invocation of issue preclusion there need not be a prior adjudication on the merits (as is often the case with res judicata) **but only a final determination of a material issue common to both cases.**" *Oklahoma Dept. of Public Safety v. McCrady,* 2007 OK 39, ¶ 7, 176 P.3d 1194, 1199. The doctrine of *res judicata* or "claim preclusion," bars relitigation of issues which were or could have been raised in a previous proceeding finally determined on the merits where there is an identity of parties in the former and latter actions, or the parties in the former and latter actions are in privity. *Veiser,* 1984 OK 61, n. 9, 688 P.2d 796, 800.

¶ 26 KAL and GasRock are parties to the prior federal court matter and this case, with the identical priority contest at issue in both forums. Although KAL characterizes the federal order as interlocutory, the federal court order appears in all respects final on the determination of lien priority which was, and is, **the material issue** between these parties. We further note the federal court's nine-page order was entered subsequent to the parties' submission of briefs and an evidentiary hearing on the matter. While our record is scant regarding the federal court proceedings, there is nothing suggestive that the parties had anything less than a full and fair opportunity to litigate the priority contest in the earlier case.

¶ 27 The federal district court rendered its decision in accordance with the general "first in time rule" pursuant to 42 O.S. § 144 as opposed to an application of 52 O.S. § 287.8, which grants a first and prior statutory lien on participating interests in the unit for the operating expenses of the unit. "The principle of issue preclusion operates to bar from relitigation both correct and erroneous resolutions of jurisdictional and nonjurisdictional challenges." *McCrady*, ¶ 7, 176 P.3d at 1199.

¶ 28 We therefore AFFIRM the trial court's March 30, 2011 Partial Journal Entry of Judgment in favor of GasRock against KAL, which was entered in recognition of the preclusive effect of the prior February 2009 order in Case No. CIV–08–395, United States District Court for the Western District of Oklahoma.

¶ 29 The trial court's October 28, 2011 Journal Entry of Judgment and the December 13, 2011 Order denying GasRock's Motion to Vacate or Modify Judgment and Motion for New Trial are AFFIRMED. Additionally, the trial court's March 13, 2012 Order granting Pan American's Motion for Attorney Fees and Costs is AFFIRMED.

HETHERINGTON, P.J., and GOREE, J., concur.